OPINION OF THE COURT
Smith, J.
The primary issue on this appeal is whether a provision in the New York City Charter requiring the funding of the Independent Budget Office (IBO) has been properly amended or repealed by the actions of the Mayor and City Council. Specifically, we consider (1) whether the adoption by the City Council of a modification of the City’s fiscal year 1991 budget that, among other things, eliminated funding for the IBO, as well as its adoption of the fiscal year 1992 budget that contained no appropriation for the IBO, was the legislative equivalent of a local law delaying the establishment of the IBO and (2) whether the 1991 budget modification and 1992 budget implicitly amended the Charter’s IBO provisions.
On November 7, 1989, a majority of the voters of the City of New York approved a revision to the New York City Charter establishing a new City agency, the IBO.[1] The Charter Revision Commission formulated the IBO to reform the City’s budget-making process by, among other things, enhancing official and public understanding of the City’s budgetary matters.
The Charter IBO provisions state that the IBO shall be headed by a Director who shall be appointed upon the recommendation of the IBO Advisory Committee, by a special com *382 mittee convened for that purpose (NY City Charter § 259 [a]).[2] The IBO Advisory Committee must be comprised of 10 members appointed jointly by the Comptroller and the City Council President[3] to serve staggered five-year terms (NY City Charter § 259 [d]). The Special Appointment Committee must consist of the Comptroller, the Council President, a borough president chosen by the borough presidents, and a council member chosen by the City Council (NY City Charter § 259 [a]).
The Comptroller and the City Council President were charged with the duty of appointing the IBO Advisory Committee by February 15, 1990 (NY City Charter § 1152 [d] [2]). The Advisory Committee had to make its recommendation to the Special Committee convened to appoint the IBO Director by June 15, 1990 (id.). The Special Appointment Committee was to appoint a Director no later than August 1, 1990 (id.).
The Director of the IBO is charged with the duty of appointing such personnel and procuring such services as shall be necessary to carry out the powers and duties of the IBO (NY City Charter § 259 [b]).[4] Those powers and duties include providing the Comptroller, the City Council President, the members of the City Council committees, the borough presidents, and the community boards with information that will assist them in discharging their responsibilities related to the budgetary process (NY City Charter § 260). Appropriations equalling at least 10% of the appropriations for the expenses of the Office of Management and Budget shall be available to *383 pay for the expenses of the IBO during each fiscal year (NY City Charter § 259 [b]).
For fiscal year 1991, pursuant to section 259 of the City Charter, $2,898,000 was appropriated for the IBO. In addition, the Mayor’s financial plan for fiscal years 1992-1994 predicted expenditures of approximately $2,600,000 annually for the IBO. However, due to a recessionary trend in the economy continuing into the second half of 1990, the Mayor projected a budget deficit of approximately $900,000,000 for fiscal year 1991. In an attempt to close the expected budget gap, the Mayor recommended that the City Council postpone start-up of the IBO until fiscal year 1993. On March 7, 1991, before any of the funds appropriated to the IBO were spent, the City Council approved a budget modification eliminating the funding for the IBO for fiscal year 1991.
An ongoing fiscal crisis in the City and an attempt to close another estimated budget gap resulted in the Mayor’s proposed budget for fiscal year 1992 containing no appropriations for the IBO. The City Council approved that budget on July 2, 1991. Likewise, the adopted budget for fiscal year 1993 contained no appropriation for the IBO. Citing a continuing local and national recession, and based on projected budget deficits through fiscal year 1996, the Mayor recommended that the start-up of the IBO be postponed indefinitely.
In October 1991, petitioners, not-for-profit advocacy, research and lobby groups, and community-based organizations involved in countless budgetary and housing causes in the City, commenced this CPLR article 78 proceeding in the nature of a mandamus to compel respondents Mayor and City Council to establish and fund the IBO, and to compel respondent IBO Special Appointment Committee to appoint a Director, in accordance with the IBO provisions in the City Charter. Supreme Court (1) granted the petition, (2) adjudged that the failure to fund the IBO constituted a violation of section 259 (b) of the City Charter, (3) adjudged that the failure to appoint a Director of the IBO by August 1, 1990 was a violation of sections 259 (a) and 1152 (d) (2) of the Charter, (4) ordered the Mayor and the City Council to include in the budget for fiscal year 1993 an allocation for the IBO that comports with section 259 (b), and (5) ordered the Special Appointment Committee to reinstitute the prescribed process for the appointment of the IBO Director within a prescribed period. The court concluded that the proceeding was properly brought in the nature of a *384 mandamus since the provisions of the City Charter calling for the establishment and funding of the IBO, as well as the provision calling for the appointment of a Director, were cast in mandatory terms, as evidenced by the repeated use of the word “shall,” and as confirmed by the legislative history and intent of the Charter Revision Commission. The court also noted that the doctrine of legislative equivalency — the principle that legislative acts must be repealed or modified only by other legislative acts of equal import — must be observed in order to “effect the practical consequences of a formal amendment [to the City Charter] — be it to postpone the establishment of IBO or extinguish it all together” and that "nothing less than a duly enacted amendment is necessary to accomplish this result.” On appeal by respondents Mayor, City Council President, and City Council,[5] the Appellate Division affirmed for the reasons stated by Supreme Court (see, 191 AD2d 364). This Court denied petitioners’ request to vacate respondents’ automatic stay pursuant to CPLR 5519 (a) (1) and granted respondents’ cross motion for leave to appeal (82 NY2d 747).
Respondents, relying on certain sections of the City Charter that provide that local laws shall be adopted by a majority vote of the City Council and by the approval of the Mayor (see, NY City Charter §§ 34-37, 40 [1]), as well as on section 256 which states that an adopted or modified budget “shall have the force of law,” urge that the courts below erred in concluding that nothing less than a duly enacted amendment is necessary to delay establishment and funding of the IBO. Respondents assert that the Mayor-proposed and City Council-approved fiscal year 1991 budget modification that rescinded the prior appropriation for the IBO, as well as the Mayor-proposed and City Council-adopted fiscal year 1992 budget containing no appropriation for the IBO, are the legislative equivalent of a local law delaying the establishment of the IBO. Petitioners argue that even assuming the City Council had the power to amend the City Charter by a budget resolution, it has not expressed its intent to do so. They argue further that any suspension of the enforcement of section 259 of the City Charter would require both the approval of the City Council and a referendum of the voters since it would abolish or curtail the power of four elected officials (the City *385 Comptroller, the City Council President, a member of the Council and the Borough President of the Bronx).[6]
It is clear that the Charter mandates the establishment of the IBO. The language of the Charter explicitly requires that the office be set up and funded. It is equally clear that the City Council has not expressed an intention to amend the Charter.
In Matter of Gallagher v Regan (42 NY2d 230, 234), this Court held that the adoption of a budget without an appropriation for a particular office in accordance with the provisions in a County Charter or Administrative Code was not the legislative equivalent of a local law amending the County Charter or Administrative Code to abolish that office. The Court reasoned that " 'a legislative act of equal dignity and import’ ” is required to modify a statute, and that " '[n]othing less than another statute will suffice’ ” (id., at 234). Further, section 32 of the New York City Charter ("Local laws”) provides, in part, "Except as otherwise provided by law, all legislative action by the council shall be by local law * * * [and e]very local law shall embrace only one subject” (see also, Municipal Home Rule Law § 20 [3] [every local law shall embrace only one subject]). Here, the 1991 budget modification and the 1992 budget did not embrace only one subject, but rather encompassed numerous subjects. In addition, the City Council adopted the 1991 budget modification and 1992 budget by resolution, which, as we have stated, is not an act of equal dignity and import with a local law delaying the establishment and funding of the IBO (see, 42 NY2d, at 234, supra [quoting 3 McQuillin, Municipal Corporations § 12.121 (3d ed)]).
Respondents also argue that the adopted fiscal year 1991 budget modification and fiscal year 1992 budget impliedly amended the City Charter to delay the start-up of the IBO *386 because the Charter called for the establishment and funding of the IBO, whereas the adopted budgets contained no appropriations for that office. Petitioners assert that the City Council’s failure to fund the IBO should not be construed as an implied repeal or amendment of the Charter’s IBO provisions since the laws of this State favor express legislative actions.
It is settled that "[rjepeal or modification of legislation by implication is not favored in the law” (Matter of Consolidated Edison Co. v Department of Envtl. Conservation, 71 NY2d 186, 195; see also, Matter of Natural Resources Defense Council v New York City Dept. of Sanitation, 83 NY2d 215, 222 [Feb. 22 1994]; Alweis v Evans, 69 NY2d 199, 204; Ball v State of New York, 41 NY2d 617, 622). "Absent an express manifestation of intent by the Legislature — either in the statute or the legislative history — the courts should not presume that the Legislature has modified an earlier statutory grant of power to an agency” (Matter of Consolidated Edison Co., supra, at 195). Here, the City Council, in adopting the 1991 budget modification and the 1992 budget, did not manifest an intent to amend the City Charter’s IBO provisions. Those budgets are silent as to any such intention by the City Council.
Having concluded that the City Council’s adoption of the fiscal year 1991 budget modification and the fiscal year 1992 budget was not the legislative equivalent of a local law delaying the establishment of the IBO, or an implicit amendment to the Charter’s IBO provisions, we do not reach the question of whether amendments to the City Charter’s IBO provisions must be by referendum.
We do, however, consider respondents’ claim that the lower courts abused their discretion by failing to defer to their determination that an annual appropriation for the IBO is not feasible because it would mean reducing appropriations for other essential City services. While a proceeding in the nature of a mandamus to compel is available where, as here, the petitioners have demonstrated a clear legal right to require public officials to perform a duty enjoined upon them by the New York City Charter (see, CPLR 7801, 7803 [1]; see also, Matter of Coombs v Edwards, 280 NY 361, 364), issuance of a mandatory order lies in the discretion of the court in light of equitable principles (see, Matter of Sheerin v New York Fire Dept. Arts. 1 & IB Pension Funds, 46 NY2d 488, 496; Matter of Crane Co. v Anaconda Co., 39 NY2d 14, 18; Matter of *387 Coombs v Edwards, 280 NY, at 364, supra). ”[0]nly where the case presented shows no room for the exercise of a reasonable discretion may it be held, as a matter of law, that there has been an abuse of discretion” (Matter of Coombs, supra, at 364).
Here, respondents assert that because of a difficult fiscal crisis, and since petitioners had ample information about the City’s budget and budgetary process even without the IBO, they decided to divert money that would have funded the IBO to other vital City services. The lower courts have ample room to exercise their discretion in compelling respondents to comply with the IBO provisions in the City Charter and to give meaning to the intention of the people as expressed through their vote. Thus, there was no abuse of discretion. However, in light of the mandate to respondents to comply with the Charter’s IBO provisions within a time period since passed, we must remit the matter to Supreme Court for that court to propose a new time frame within which compliance with those provisions must be had.
Accordingly, the order of the Appellate Division should be modified, with costs to petitioners, by remitting the matter to Supreme Court, New York County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.
Chief Judge Kaye and Judges Simons, Bellacosa and Levine concur; Judge Titone and Ciparick taking no part.
Order modified, with costs to petitioners, by remitting the matter to Supreme Court, New York County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.

. The new Charter provisions were required by the decision in New York City Bd. of Estimate v Morris (489 US 688) which held that the structure of the Board of Estimate violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

. Section 259 (a) of the New York City Charter provides, in part: "There shall be an independent budget office to be headed by a director who shall be appointed upon the recommendation of the independent budget office advisory board, by a special committee convened for this purpose. Such committee shall consist of the comptroller, the council president, a borough president chosen by the borough presidents, and a council member chosen by the council, and shall act by majority vote. The director shall be appointed without regard to political affiliation and solely on the basis of fitness to perform the duties assigned by this chapter.”

. On January 1, 1994, the position of City Council President ceased to exist and the responsibilities of that office with respect to the IBO were assumed by the position of Public Advocate (Local Laws, 1993, No. 19 of City of New York).

. New York City Charter § 259 (b) provides, in part: "The director shall appoint such personnel and procure the services of such experts and consultants, within the appropriations available therefor, as may be necessary for the director to carry out the duties and functions assigned herein. Such personnel and experts shall perform such duties as may be assigned to them by the director.”

. The members of the IBO Special Appointment Committee did not appeal the judgment.

. Municipal Home Rule Law § 23 (2) provides, in part:
"Except as otherwise provided by or under authority of a state statute, a local law shall be subject to mandatory referendum if it: * * *
"f. Abolishes, transfers or curtails any power of an elective officer.”
Section 38 of the New York City Charter provides, in part:
"A local law shall be submitted for the approval of the electors at the next general election held not less than sixty days after the adoption thereof, and shall become operative as prescribed therein only when approved at such election by the affirmative vote of a majority of the qualified electors of the city voting upon the proposition, if it: * * *
"5. Abolishes, transfers or curtails any power of an elective officer.”