OPINION OF THE COURT
Carol H. Arber, J.
Timothy L. Nickels, individually, and as President of the Police Benevolent Association, Inc., Housing Police Department, City of New York, moves for an order pursuant to CPLR 3017 (b) declaring that the vote of the New York City Housing Authority (Housing Authority) to transfer New York City Housing Authority police officers pursuant to section 70 (2) of the Civil Service Law is void and in contravention of law. Petitioner further moves for an order pursuant to CPLR article 78 to permanently enjoin the respondents, City Housing Authority, Ruben Franco, Chairperson, New York City Housing Authority, New York City Housing Authority Police Department: (1) from involuntarily transferring any police officer from the New York City Housing Authority Police Department to the New York City Police Department; (2) from disseminating or distributing any payroll information of any police officer of the New York City Housing Authority Police Department to any agency or governmental unit as those terms are defined in the Public Officers Law; and (3) directing that respondents demand and obtain the return of any documentation from any such governmental entity or individual to whom such information has been delivered.
Petitioners seek to enjoin the Housing Authority from transferring all the uniformed personnel of the New York City Housing Authority Police Department (HAPD) to the New York City Police Department (NYPD) on the following *613 grounds: (1) the resolution adopted by the Housing Authority is void in that it requires enabling legislation both on the City and State level before the transfer can be carried out; and (2) the uniformed personnel of the HAPD would be irreparably harmed due to a diminution of established contractual agreements resulting in the loss of workers’ compensation benefits, a diminution in terminal leave benefits, loss of retirement benefits, diminution of pension benefits, and by the unauthorized release of personal information concerning police officers which places the safety of officers and their families at risk.
Respondents oppose the petition on the grounds that the functional transfer of officers and employees of the Housing Authority is authorized by State law, and that the transfer of personal information to appropriate City agencies in furtherance of such transfer is permitted under State law. Respondents further contend that the contemplated transfer of personnel does not constitute an impairment of constitutionally protected benefits.
On September 9, 1994, the Housing Authority Board met and voted to transfer all of the police officers from the New York City Housing Authority Police Department to the New York City Police Department. The terms of the transfer were reduced to a memorandum of understanding and the Mayor issued an Executive Order calling for the transfer to take effect on October 1, 1994.
Respondents argue that Civil Service Law § 70 (2) empowers them to effectuate the transfer of the HAPD functions to the City. Respondents claim that section 70 (2) establishes a procedure for the transfer of personnel functions from one "civil division” of the State to another, or from one agency or department of a civil division to another. In contrast petitioners argue that Civil Service Law § 70 (2) does not apply to respondent HAPD because HAPD is not a civil division of the State. Petitioners assert that in order to effectuate the transfer of HAPD employees as outlined in the proposed merger, respondents must obtain legislative action to avoid violating the rights of affected personnel based on the Civil Service Law.
The first question that must be addressed by this court is whether section 70 of the Civil Service Law was intended to apply to public authorities. The applicability of section 70 (2) to the Housing Authority must be examined in light of the relevant case law and the legislative history of the statute.
*614 CIVIL SERVICE LAW § 70
Civil Service Law § 70 (2) provides as follows: "2. Transfer of personnel upon transfer of functions. Upon the transfer of function (a) from one department or agency of the state to another department or agency of the state, or (b) from one department or agency of a civil division of the state to another department or agency of such civil division, or (c) from one civil division of the state to another civil division of the state, or (d) from a civil division of the state to the state, or vice versa, provision shall be made for the transfer of necessary officers and employees who are substantially engaged in the performance of the function to be transferred.”
The language of section 70 (2) expressly limits governmental entities which can transfer employees: (1) to a "department or agency of the state;” (2) to a "department or agency of a civil division of the state;” (3) to a "civil division of the state;” and (4) to "the state”. Since the Housing Authority is not a department or agency of the State, the next inquiry for this court to consider is whether the Housing Authority is a civil division of the State within the meaning of Civil Service Law § 70 (2).
The Housing Authority was created by the State Legislature in 1934 and is a public authority organized under the Municipal Housing Authorities Law (L 1934, ch 4, §§ 60-78), of the former State Housing Law (L 1926, ch 823, as reenacted by L 1927, ch 35).
In Collins v Manhattan & Bronx Surface Tr. Operating Auth. (62 NY2d 361 [1984]), the Court of Appeals was asked to address the question of whether an "authority” was a civil division of the State.[1] The Court, after reviewing the history of "authorities” as entities concluded that an authority was not *615 a civil division of the State and that promotion of its personnel was therefore not governed by the Civil Service Law.
In exploring the nature of an authority as an entity, the Court found that it was intended to "operate with greater autonomy than permitted by the legal and procedural barriers to which civil divisions are subject.” (Collins v Manhattan & Bronx Surface Tr. Operating Auth., supra, at 369.) After full consideration, the Court concluded that "for the most part public authorities have been created as a means of expanding government operations into areas generally carried on by private enterprise, areas not traditionally regarded as 'conventional and stable duties * * * of civil government’ ” (at 371).
Since the Housing Authority is not a civil division of the State, the next inquiry is whether the Legislature intended Civil Service Law § 70 to apply to public authorities. In undertaking this analysis, it is helpful to examine the legislative history of section 70 and of recent amendments to section 70 which were enacted to extend coverage to other governmental entities.
In 1991, section 70 (2) was amended to add section 70 (2) (b) which extends the applicability of section 70 (2) to transfers of functions "from one department or agency of a civil division of the state to another department or agency of such civil division.” The legislative history of the amendment reveals that this language was added to expand the protection of section 70 (2) to employees transferred from one department or agency to another within the same civil division, a group previously excluded from the statute. The legislative history goes on to note that the amendment was needed to address what the court identified in Prey v County of Cattaraugus (105 Misc 2d 1091 [Sup Ct, Cattaraugus County 1980], affd in part, read in part 79 AD2d 205 [4th Dept 1981]) as an unfortunate "legislative oversight”: "[n]o good reason has been advanced or suggested and none has been discovered by this court to explain why logically and equitably protective provisions similar to those in subdivision 2 of section 70 of the Civil Service Law are not applicable when personnel transfers are on an interdepartmental basis on the county level, rather than at the State level of employment. Perhaps the answer lies simply in legislative oversight” (at 1097).
Even if the absence of reference to "authorities” in section 70 (2) is not considered in and of itself conclusive, the addition of section 70 (5) in 1989 makes it clear that the Legislature *616 intended to exclude public authorities from the coverage of section 70 (2). That subdivision provides for application of section 70 to situations "5. (a) Where, because of economy, consolidation or abolition of functions, curtailment of activities or otherwise, a police department of any county, city, town, village, district, commission, authority or public benefit corporation is dissolved or abolished and the functions of such department are assumed by another police agency by contractual agreement or payment or taxation therefor, the provisions of this section shall apply.”
Paragraph (b) of section 70 (5) specifically provides that:

"For the purposes of this subdivision:

"(1) The term 'police agency’ shall mean any agency or department of a county, city, town, village, district, commission, authority or public benefit corporation having responsibility for enforcing the criminal laws of the state.” (Emphasis added.)
However, paragraph (b) (2) specifically exempts the NYPD and the HAPD from its coverage, "(2) The term 'police agency’ or 'police department’ shall not be construed to include the police department of a city of one million or more persons, the police department of a housing authority of a city of one million or more persons, or the police department established pursuant to the provisions of section one thousand two hundred four of the public authorities law. ” (Emphasis added.)
Section 70 (5) (a) and (b) of the Civil Service Law specifically prohibit the transfer of HAPD personnel to the NYPD. Clearly, had the Legislature intended section 70 (2) to apply to the HAPD, then the language of section 70 (5) would have been superfluous.
The inapplicability of section 70 (2) to the Housing Authority is further evidenced by the legislative history of section 70 (5) (eff July 16, 1989).[2]
*617 The only provision of section 70 that clearly does apply to employees of public authorities is section 70 (6) which was added in 1993. That subdivision provides: "Notwithstanding the provisions of subsection one of this section or any other provision of law, any city having a population of one million or more may by agreement negotiated between such city and an employee organization pursuant to article fourteen of this chapter provide for the involuntary transfer of employees between city agencies. For purposes of this subdivision, the term 'city agency’ shall include any school district, public authority * * * or other instrumentality of government on whose behalf such city is authorized to negotiate collective bargaining agreements.” (Civil Service Law § 70 [6] [emphasis added].) This subdivision explicitly applies to the Housing Authority since it states that this subdivision "shall include * * * public authority.” This is in marked contrast to section 70 (2) which does not include public authorities among the entities specifically enumerated in that subdivision.
As the Court of Appeals stated in Patrolmen’s Benevolent Assn, v City of New York (41 NY2d 205, 208 [1976]), "[i]t is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature * * * and where the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used” (citations omitted).
Based on the clear language of the statute, the involuntary transfer of HAPD employees to the NYPD was not contemplated under the provisions of section 70 (2).
The existence of legislation to enable the voluntary transfer of officers between the NYPD and HAPD lends additional support to the conclusion that similar legislation is necessary to provide for the involuntary transfer of an entire police department as contemplated by respondents.
An examination of the Lateral Transfer Bill enforces the conclusion that section 70 (2) does not apply to the proposed merger here (L 1991, ch 675). The Lateral Transfer legislation was enacted to permit the voluntary transfer of police officers among the NYPD, HAPD and New York City Transit Authority Police Department appointed from a common civil service list prior to January 1, 1992.
It is equally apparent from other provisions of the Civil Service Law that the Legislature intended mergers of police forces be carried out in an orderly, reliable way in order to *618 guarantee the retention of civil service rights. For example, the provisions of Civil Service Law § 83, which apply to mergers of municipal police forces, require that "orderly transitional procedures” be followed in the event of merger of police agencies, and that the procedures include the creation of a police advisory board. Significantly, section 83-a specifically excludes from its coverage police departments "wholly contained in a city” and, therefore, is inapplicable to the proposed merger.[3]
Respondents’ assertions that numerous laws must be read together to find that the merger is authorized fails to address the fact that the Legislature has been clear and concise in the language used to apply to an authority in recognition of its special and peculiar role in governance of the State.
Respondents also argue that no additional legislation is required because the City Council passed its budget on June 21, 1994 with a provision to allocate money for just such a transfer. However, the "Memorandum of Terms and Conditions” requires that the following report be prepared prior to implementation of the proposed merger: "the NYPD shall provide a report to the Mayor and City Council prior to the merger of the HAPD into the NYPD which outlines the assurances obtained for continuation of HAPD federal funding * * * prior to the effective dates of the mergers, the NYPD shall provide a report on an operational plan to the Mayor and the City Council describing the functions of the new Housing Bureaus within the NYPD.” The City Council added explicit language to the "Memorandum of Terms and Conditions” which states, in pertinent part, that its approval of the budget does not constitute approval of the proposed merger: "Additionally, the shift of funding for the Transit and Housing Police Departments which is effected in the FY '95 Budget will not impair City Council prerogatives, including required legislative approvals, if any, on the proposed merger.”
Recently the Court of Appeals addressed a similar issue *619 when the City failed to provide funding for the Independent Budget Office (IBO), a new agency required to be established pursuant to the New York City Charter adopted in 1989. At issue was whether a budget provision eliminating funding for the IBO, and the adoption of a subsequent budget which contained no appropriation for the agency, constituted the legislative equivalent of a local law. The Court held that the City Council’s adoption of the budget modification was neither "the legislative equivalent of a local law delaying the establishment of the IBO, or an implicit amendment to the Charter’s IBO provisions.” (Matter of New York Pub. Interest Research Group v Dinkins, 83 NY2d 377, 386 [1994].)
In an earlier decision, the Court held that the adoption of a budget without an appropriation for a particular office as required by a County Charter or the Administrative Code was not the legislative equivalent of a local law amending such Administrative Code or County Charter to abolish that office. (Matter of Gallagher v Regan, 42 NY2d 230 [1977].) The Courts noted in both cases that " ' "a legislative act of equal dignity and import” ’ is required to modify a statute, and that ' "[n]othing less than another statute will suffice” ’ ” (83 NY2d, supra, at 385, quoting 42 NY2d, at 234). "Absent an express manifestation of intent by the Legislature — either in the statute or the legislative history — the courts should not presume that the Legislature has modified an earlier statutory grant of power to an agency.” (Matter of Consolidated Edison Co. v Department of Envtl. Conservation, 71 NY2d 186, 195 [1988].) The status of the HARD is premised on a number of State and local laws including the Public Authorities Law, the Civil Service Law and the Administrative Code of the City of New York. In order to authorize this merger, the laws themselves must be changed or a new authorization enacted.
Respondents’ reliance on the passage of a budget as sufficient legislation is misplaced since the adoption of a budget, standing alone, does not constitute legislation approving the proposed merger. The budget approved by the City Council, like that in the Matter of New York Pub. Interest Research Group case (supra), encompasses hundreds of budget appropriations rather than one subject. Furthermore, there is nothing to suggest that the City Council intended its approval of the budget to be viewed as its approval of the merger. To the contrary, the language of the Memorandum of Terms and Conditions directly contradicts such implication.
Based on the foregoing discussion of the case law and *620 legislative history of Civil Service Law § 70 (2), it is clear that: (1) the courts have found "authorities” to be entities outside of the parameters of Civil Service Law § 70 (2); and (2) the Legislature did not intend that Civil Service Law § 70 (2) apply to "authorities”. Accordingly, the Housing Authority, in its efforts to transfer its work force to the City, is acting without authority in failing to first seek a legislative enactment approving the transfer.
PENSION/SENIORITY RIGHTS INFRINGEMENT
Based on an analysis of the State Constitution as well as cases applied to pension rights, this court is compelled to conclude that legislative action is also required to insure that petitioner’s salary and pension benefits are not jeopardized by the proposed merger.
The New York Constitution specifically provides that pension or retirement benefits of public employees may not be impaired: "membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be * * * impaired.” (NY Const, art V, § 7.)
The protection accorded the pension benefits of public employees under this constitutional provision has long been recognized and upheld by the New York courts. As the Court of Appeals noted in Kleinfeldt v New York City Empls’ Retirement Sys. (36 NY2d 95, 99 [1975]): "Before section 7 of article V of the Constitution became operative in 1940, members of a public retirement system did not have vested rights before retirement. Inchoate benefits could be modified or revoked, at the will of the Legislature * * * It was against this background that section 7 of article V of the Constitution was enacted to remedy the situation * * * The constitutional amendment characterized membership in a public retirement system as contractual, and provided that benefits might not be diminished or impaired.” (See also, Michael v Bellamy, 80 AD2d 147 [1st Dept 1981] [under NY Const, art V, § 7, membership in a retirement system is a contractual relationship, the benefit of which shall not be impaired]; Kutas v State of New York, 135 Misc 2d 1044 [Ct Cl 1987], affd 146 AD2d 542 [1st Dept 1989], vacated as moot 148 AD2d 306 [1st Dept 1989] [purpose of constitutional provision is "to protect government employees against detrimental unilateral legislative or executive changes in their pension benefits” (at 1047)].)
*621 The applicability of NY Constitution, article V, § 7 to the pension rights held by employees of public authorities was recognized by the Court in Matter of Subway-Surface Supervisors Assn, v New York City Tr. Auth. (56 AD2d 53 [2d Dept 1977], mod on other grounds 44 NY2d 101 [1978]) which noted that: "The pension rights of the members represented by the petitioner consequently enjoy constitutional status * * * That constitutional status demands strict enforcement of the direction that their pension rights may not be impaired” (56 AD2d, at 60). Changes in such retirement plan benefits can only be made by State legislative action, not local law. (Retirement and Social Security Law § 113.)
Employees of the HARD are members of the New York City Employees’ Retirement System (NYCERS) pension benefit plan. (Administrative Code §§ 13-101, 13-157.) Employees of the NYPD are covered under the Police Pension Fund (PPF), a wholly separate, as well as different pension plan. (Administrative Code § 13-214.) Existing law provides that all members of the NYPD shall become members of the PPF. (Administrative Code §§ 13-214, 13-215.) Existing law further provides that coverage by the PPF precludes continued participation in NYCERS: "This chapter [providing coverage under NYCERS] shall not apply to any person who is, or may be, entitled to share in the police pension fund.” (Administrative Code § 13-184; see also, Administrative Code § 13-101 [3] [a]; § 13-104 [specifically excluding from definition of a " 'City-service’ ” employee entitled to NYCERS coverage "any person (who) is, or may be, entitled to share in the police pension fund”].)
While Administrative Code § 13-143 protects HAPD employees transferred to the NYPD in connection with the proposed merger from losing their pension credit, the salary rate upon which reserve benefits are calculated is not protected against impairment. For this as well as the other reasons discussed, respondents must seek legislative authorization to prevent impairment of affected personnel’s benefits.
CONCLUSION
The decision by respondents to merge the Housing Authority with the New York City Police Department can only be undertaken through the enactment of enabling legislation by the State as well as by the City. In the main, that conclusion is impelled by virtue of the fact that the entity to be merged is an "authority” to which the Civil Service Law does not *622 apply. Moreover, pension legislation is necessary to protect the rights of employees affected by the merger.
Based on the foregoing, the petition is granted in its entirety and respondents are permanently enjoined from: (1) involuntarily transferring any police officer from the New York City Housing Authority Police Department to the New York City Police Department; (2) disseminating or distributing any payroll information for any police officer of the New York City Housing Authority to any agency or governmental unit as those terms are defined in the Public Officers Law; and (3) respondents are directed to demand and obtain the return of any such documentation from any governmental entity or individual to whom such information has been delivered.

. Prior to the Collins v Manhattan & Bronx Surface Tr. Operating Auth. decision (supra), there was ample support for the proposition that a public authority is not a civil subdivision of the State as provided for in section 70 (2). (Matter of Plumbing, Heating, Piping & Air Conditioning Contrs. Assn, v New York State Thruway Auth., 5 NY2d 420 [1959] [public authority enjoys an existence separate and apart from the State, and is not a department of the State]; Methodist Hosp. v State Ins. Fund, 102 AD2d 367 [1st Dept 1984] [public benefit corporations are not political subdivisions of the State]; Ciulla v State of New York, 191 Misc 528 [Ct Cl 1948] [a housing authority is a public corporation, the very name authority connoting separateness and judicial distinction from the State and the municipal corporations of the State].) The cases make it clear that a public authority is not a division or department óf the State but rather an entity that exists separate and apart from the State.

. The legislative intent as stated in the 1989 Summary of Legislation Report: "Provides that where, because of economy, consolidation or abolition of functions, curtailment of activities, or otherwise, a police department of any county, city, town, village, district, commission, authority, or public benefit corporation (defined as any agency or department of such entities having responsibility for enforcing the criminal laws of the State) is dissolved or abolished and the functions of the department are assumed by another policy agency by contractual agreement or payment or taxation, the provisions of Civil Service Law relating to transfer of personnel shall apply. Excludes the police departments of New York City, the New York City Housing Authority, and the New York City Transit Authority from these provisions.”

. It is interesting to note that Public Housing Law, article 3, § 33 empowers the Housing Authority to accept transfers from a municipality; however, it does not empower the Housing Authority to transfer its personnel to a municipality such as New York City. Section 33 states in pertinent part: "Officers and employees of any board or department in or of the municipality, selected by the authority, who shall theretofore have passed a civil service examination with reference to the position they then hold, may be transferred with the consent of such board or department to the authority, without examination.”