■ In the Matter of CHEVRON U.S.A. INC., Appellant, v COMMISSIONER OF ENVIRONMENTAL CONSERVATION, Respondent. [927 NYS2d 452]—

Lahtinen, J.

Petitioner overpaid the state nearly half a million dollars and its requests for a refund were allegedly answered by the state

with, among other things, threats of criminal prosecution and various demands. However, petitioner was never given an official response from the state regarding its requests for a refund and, without that response, it cannot seek administrative or judicial review (*see* Navigation Law § 174 [6]; *Chevron U.S.A. Inc. v State of New York*, 86 AD3d 820 [2011] [decided herewith]). This proceeding is not about requiring the state to pay the refund nor does it address in any fashion the sundry defenses that may be available to the state or the various reasons that may exist for not paying a refund. In fact, at this procedural point, it is not even yet about whether petitioner should receive an official response to its inquiry about its overpaid half a million dollars. The limited issue in this appeal from a pre-answer dismissal of the petition is whether, under the equitable doctrine of laches, the state need not even answer the petition. While Supreme Court set forth concerns about the way events unfolded in support of its decision to invoke laches, we nevertheless exercise our discretion under the unique and narrow circumstances presented and determine that the better course is to require the state to answer the petition.

Petitioner was licensed to operate a petroleum facility in the City of Troy, Rensselaer County and, thus, was required to pay monthly major petroleum facility license (hereinafter MPFL) fees pursuant to Navigation Law article 12. Monthly MPFL fees are based on the amount of petroleum transferred to the licensee's facility, and the licensee must submit an MPFL fee report each month to the Department of Environmental Conservation (hereinafter DEC) certifying the barrels of petroleum it transferred (*see* Navigation Law § 174). Between June 2003 and August 2007, petitioner supplied certified monthly reports regarding its Troy facility with accompanying monthly fees totaling $474,108.67. Petitioner states that it discovered in October 2007 that it had mistakenly paid MPFL fees for the Troy facility because, according to petitioner, the Troy facility had been closed since 1999 and dismantled in 2006. Petitioner thus sent amended monthly reports to DEC in October 2007 for the period September 2004 to August 2007. Thereafter, petitioner submitted additional amended monthly reports for June 2003 to August 2004.

Petitioner allegedly made several efforts to resolve the overpayment issue with DEC and eventually DEC orally indicated that the fees would not be returned, prompting petitioner to make an application in September 2009 in the Court of Claims

for permission to file a late claim.[1] The Court of Claims denied the motion in February 2010, holding that it did not have jurisdiction because an administrative appeal process was available, which petitioner had not pursued, and review thereof would be pursuant to a CPLR article 78 proceeding.[2] After the Court of Claims' decision, petitioner wrote to respondent in May 2010 demanding that, within 20 days, he refund the MPFL fees or issue a determination regarding petitioner's MPFL fees for the years in dispute. Respondent did not respond and, accordingly, in September 2010, petitioner commenced this proceeding in the nature of mandamus seeking to compel respondent to review its claim for a refund and render a determination regarding the allegedly mistakenly paid MPFL fees. Supreme Court granted respondent's pre-answer motion to dismiss on the ground that the relief requested was barred by the doctrine of laches. Petitioner appeals.

The sole argument on appeal is whether Supreme Court erred in dismissing the petition as barred by laches. In a CPLR article 78 proceeding seeking mandamus to compel a government official to act, the statute of limitations does not begin to run until the petitioner demands that the official act and the official refuses (*see Austin v Board of Higher Educ. of City of N.Y.*, 5 NY2d 430, 442 [1959]; *Matter of Mitchell v Essex County Sheriff's Dept.*, 14 AD3d 825, 825 [2005]). However, a petitioner may not extend the time to act indefinitely by waiting to make a demand (*see Austin v Board of Higher Educ. of City of N.Y.*, 5 NY2d at 442). "The petitioner must make his or her demand within a reasonable time after the right to make it occurs, or after the petitioner knows or should know of the facts which give him or her a clear right to relief, or else, the petitioner's claim can be barred by the doctrine of laches" (*Matter of Barresi v County of Suffolk*, 72 AD3d 1076, 1076 [2010], *lv denied* 15 NY3d 705 [2010] [citations omitted]; *see generally Matter of Board of Educ. of Scotia-Glenville Cent. School Dist. v Shapiro*, 85 AD2d 763, 764 [1981]). In the context of "an article 78

---

1. The dissent indicates that oral refusal occurred between December 2007 and January 2008. According to the affidavit submitted by petitioner's compliance supervisor, between those dates is when the conversation occurred in which an attorney at DEC "threatened to prosecute [the officer] and/or [petitioner] for perjury and 'administrative fraud.'" However, the record reveals that, after this conversation, documents were exchanged and communications continued in an apparent effort to resolve what was for both parties a unique set of circumstances.

2. In an appeal decided herewith, we affirm the Court of Claims (*Chevron U.S.A. Inc. v State of New York*, 86 AD3d 820 [2011], *supra*).

proceeding in the nature of mandamus, proof of unexcused delay without more may be enough" to invoke laches (*Matter of Sheerin v New York Fire Dept. Arts. 1 & 1B Pension Funds*, 46 NY2d 488, 495-496 [1979]; *see Matter of Doolittle v County of Broome*, 220 AD2d 864, 866 [1995]). When reviewing a discretionary determination by a lower court, this Court "is not limited to determining whether there was an abuse of discretion; [we] may exercise [our] independent discretion" (1 Newman, New York Appellate Practice § 4.01; *see e.g. Matter of State of New York v Ford Motor Co.*, 74 NY2d 495, 501 [1989]; *State of New York v Barone*, 74 NY2d 332, 336 [1989]; Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C5522:1, at 266).

Although Supreme Court is accorded discretion in determining whether to grant mandamus, we conclude that, under the unique circumstances presented, the petition should not have been dismissed as barred by laches. Initially, we note that there was no prior case law addressing the proper procedure for seeking a return of an overpayment of MPFL fees. Moreover, as we indicate in our decision affirming the Court of Claims in *Chevron U.S.A. Inc. v State of New York* (86 AD3d 820 [2011], *supra*), the statutory requirement of an administrative procedure to seek the return of overpaid MPFL fees was not set forth with the same level of clarity as administrative requirements of other statutes. Indeed, it is fair to state that it was not clear that petitioner's initial remedy rested in an administrative procedure until the Court of Claims rendered its decision in February 2010. Within about three months of that decision, petitioner made a formal demand upon respondent regarding its overpayment. Rather than providing petitioner with a response—which would have permitted petitioner to eventually seek judicial review if respondent decided against it—respondent simply did nothing. Once the procedure for pursuing a refund was apparent, petitioner did not delay unduly in making its formal demand to respondent. While reasons may ultimately be found for respondent to reject petitioner's request, simply ignoring petitioner's request under the circumstances is not an appropriate response.

Spain and Malone Jr., JJ., concur.

McCarthy, J. (dissenting). Because Supreme Court correctly dismissed the petition as barred by the doctrine of laches, we dissent and would affirm. As the majority states, in a proceeding seeking mandamus to compel a government official to act, the statute of limitations does not begin to run until the official refuses to take action that the petitioner demanded (*see Austin*

*v Board of Higher Educ. of City of N.Y.*, 5 NY2d 430, 442 [1959]; *Matter of Mitchell v Essex County Sheriff's Dept.*, 14 AD3d 825, 825 [2005]). A petitioner may not circumvent the statute of limitations, however, by waiting indefinitely to demand action from the official (*see Austin v Board of Educ. of City of N.Y.*, 5 NY2d at 442; *Matter of Dorsey v Coleman*, 40 AD3d 1187, 1188 [2007]; *Matter of Thomas v Stone*, 284 AD2d 627, 628 [2001], *appeal dismissed* 96 NY2d 935 [2001], *lv denied* 97 NY2d 608 [2002], *cert denied* 536 US 960 [2002]). Unlike the traditional equitable doctrine of laches, which requires a respondent to show some prejudice attributable to the delay, laches may be invoked in the context of a proceeding in the nature of mandamus to compel based upon proof of unexcused delay without more (*see Matter of Sheerin v New York Fire Dept. Arts. 1 & 1B Pension Funds*, 46 NY2d 488, 495-496 [1979]; *Matter of Doolittle v County of Broome*, 220 AD2d 864, 866 [1995]). A trial court's decision denying a writ of mandamus—even if the relief is withheld due to application of the doctrine of laches—may be overturned only if the court abused its discretion (*see Matter of Sheerin v New York Fire Dept. Arts. 1 & 1B Pension Funds*, 46 NY2d at 496; *see also Matter of New York Pub. Interest Research Group v Dinkins*, 83 NY2d 377, 386-387 [1994]). We find no abuse of discretion here.

The majority finds that a lack of clarity in the law regarding petitioner's remedy partially excuses petitioner's failure to make an earlier demand of respondent. While no prior cases have apparently addressed the procedure for collecting an overpayment of these fees, and the statute could have been more explicit, the statutory language was not ambiguous or misleading. As this Court decides in the companion case *Chevron U.S.A. Inc. v State of New York* (86 AD3d 820 [2011] [decided herewith]), Navigation Law § 174 (6) and related regulations set forth an administrative process to contest the overpayment of fees. Petitioner could have utilized that process. Additionally, as the Court of Claims held in its decision, the state was immune from liability and could not be sued directly to recoup fees allegedly overpaid under Navigation Law article 12 (*see* Navigation Law § 176 [2] [b]). Considering the law, petitioner should have demanded a refund of its overpaid fees from respondent instead of filing a claim in the Court of Claims.

Even if a Court of Claims action was the proper vehicle for recovering its overpaid fees, petitioner untimely proceeded in that court; petitioner had to make an application for permission to file a late claim (*see* Court of Claims Act § 10 [6]). The majority, after finding that the law was unclear and forgiving

petitioner for not making a claim prior to receiving the Court of Claims decision explaining the proper procedure to recoup overpaid fees, looks only to petitioner's actions after it received that decision in February 2010.[3] But if we assume that petitioner reasonably sought to proceed in the Court of Claims rather than following the administrative process, we should look at petitioner's actions prior to filing its application in that court to evaluate whether petitioner inexcusably delayed in pursuing any official avenue of recovery.[4]

Petitioner paid the disputed fees from June 2003 to August 2007. Each month, petitioner submitted reports in which its excise tax compliance supervisor swore, under penalty of perjury, to the amount of petroleum products that passed through the Troy facility and that there had been no change in circumstances affecting its license for that facility. When petitioner realized in October 2007 that the facility had been closed since 1999 and was dismantled in 2006, petitioner submitted amended reports for the period of September 2004 to August 2007. Amended reports for the period of June 2003 to August 2004 were not submitted until June 2009.[5] Petitioner acknowledges that during a phone discussion with one of respondent's employees, the employee orally refused to refund the overpayment, although no substantive reason was given. According to petitioner, this conversation occurred in either December 2007 or January 2008. In the face of this oral refusal, petitioner's reaction—that it has been "patiently wait[ing] for a written response from respondent" since 2007—is unreasonable (*compare Matter of Doolittle v County of Broome*, 220 AD2d at 866).

This Court has held that the statute of limitations for a CPLR article 78 proceeding begins to run when the petitioner "receives oral or written notice" of the adverse administrative determination (*Matter of Singer v New York State & Local Employees'*

---

**3.** After receiving the decision, petitioner waited until May 2010 to make a demand to respondent for a refund, asking for a response by a set date later in May. Although it did not receive a response by that date, petitioner then waited until September 2010 to commence this proceeding.

**4.** While we agree with the majority's statement that ignoring petitioner's request was not an appropriate response by respondent, the doctrine of laches as applied in this context focuses on petitioner's delay. Respondent's failure to act would be relevant only to the extent that it lulled petitioner into inaction or delay, which was not the case here (*cf. Phillips v Dweck*, 300 AD2d 969, 969 [2002]; *Cranesville Block Co. v Niagara Mohawk Power Corp.*, 175 AD2d 444, 445 [1991]; *Schirano v Paggioli*, 99 AD2d 802, 804 [1984]).

**5.** The record does not include any explanation as to why petitioner did not realize in October 2007 that it had overpaid fees for this time period as well as the earlier time periods, or what caused its delay in submitting amended reports for this period.

*Retirement Sys.*, 69 AD3d 1037, 1038 [2010]; *see Matter of Feldman v New York State Teachers' Retirement Sys.*, 14 AD3d 769, 770 [2005]; *Matter of Scott v City of Albany*, 1 AD3d 738, 739 [2003] ["oral notification is sufficient to commence the running of the statute of limitations where . . . (a) petitioner is adversely impacted and aggrieved"]). Respondent thus may also be entitled to dismissal based upon the statute of limitations having run prior to petitioner commencing any court action—this CPLR article 78 proceeding or its action in the Court of Claims. While we cannot conclusively answer the statute of limitations question, as we cannot determine from the present record if the oral notification was clearly final and unambiguous (*see Matter of Feldman v New York State Teachers' Retirement Sys.*, 14 AD3d at 770; *compare Matter of Novillo v Board of Educ. of Madison Cent. School Dist.*, 17 AD3d 907, 909 [2005], *lv denied* 5 NY3d 714 [2005]), the oral notice was sufficient to require petitioner to do something. Petitioner could not sit on its hands waiting for a response when it had already been informed that its refund request was being denied. Yet petitioner waited until August 2009, more than 18 months after receiving this oral refusal, before seeking to file a late notice of claim in the Court of Claims. As petitioner provided no reasonable excuse for its delay in acting to protect its rights, we believe that Supreme Court did not abuse its discretion when it dismissed the petition as barred by the doctrine of laches.

Peters, J.P., concurs. Ordered that the judgment is reversed, on the facts, without costs, motion denied and matter remitted to the Supreme Court to permit respondent to serve an answer within 20 days of the date of this Court's decision. **[Prior Case History: 2010 NY Slip Op 33181(U).]**