OPINION OF THE COURT
Spain, J.
Petitioners are insurance carriers authorized to provide workers’ compensation insurance in New York. Pursuant to the self-supporting mechanism for the workers’ compensation system, the Workers’ Compensation Board collects assessments from carriers in order to fund the Board’s administrative and *74 operational expenses (see Workers’ Compensation Law § 151), the Special Disability Fund (see Workers’ Compensation Law § 15 [8] [h]) and the Special Fund for Reopened Cases (see Workers’ Compensation Law § 25-a). The carriers recover, or offset, these assessments from their insured policyholders through a surcharge, which is included in the insured’s premiums (see Workers’ Compensation Law §§ 15 [8] [h]; 25-a [3]; 151 [2] [a]). The assessments charged to the carriers are calculated by the Board based upon the statutory methodology contained in the Workers’ Compensation Law and without regard to the amount of surcharges collected by the carriers from their policyholders; the surcharges are computed by the carriers in accordance with rules of the New York Compensation Insurance Rating Board (hereinafter NYCIRB) (see Workers’ Compensation Law §§ 15 [8] [h]; 25-a [3]; 151 [2] [c]; Insurance Law § 2313 [NYCIRB is a private coalition of carriers licensed to act as a “rate service organization”]).
From 2001 through 2009, by statute, each carrier’s assessment was allocated by the Board based upon the carrier’s proportionate share of the “total written premiums” (also referred to as direct premiums written) that it wrote the preceding year (see L 2000, ch 510). By contrast, the carriers offset those assessments by collecting surcharges from their policyholders, which were computed based upon “standard premiums” pursuant to NYCIRB’s manual that outlined the methodology for calculating surcharges. The definitions differed materially between “total written premiums” used by the Board to calculate assessments on carriers, and “standard premium” used by the carriers to calculate surcharges recovered from policyholders. There appears to be no dispute that this use of different premium methodologies produced seemingly imperfect results due, in part, to the increased popularity of high deductible premiums, i.e., some carriers collected more in surcharges than they paid in assessments to the Board (i.e., the windfall carriers), while other carriers paid more in assessments than they collected in surcharges (i.e., the shortfall carriers), apparently including petitioners herein.
In 2009, as part of a state budgetary deficit reduction plan, the Legislature amended the Workers’ Compensation Law to provide that assessments, like surcharges, would be allocated based upon a carrier’s proportionate share of total “standard *75 premiums”[1] (L 2009, ch 56, § 1, part QQ, §§ 1, 2, amending Workers’ Compensation Law §§ 15 [8] [h] [Special Disability-Fund] and 151 [2] [b] [Board expenses]).[2] At issue here is that part of the 2009 legislation that also amended Workers’ Compensation Law § 15 (8) (h) (4) (Special Disability Fund) to provide that “[t]he [B]oard is hereby authorized to issue credits or refunds as necessary, in the case of overpayments made to the fund” (L 2009, ch 56, § 1, part QQ, § 1 [emphases added] [hereinafter the credit/refund amendment]). The 2009 legislation also enacted an uncodified provision, effective immediately, requiring windfall carriers—denominated as “affected insurance carrier[s]”—who had in any given year collected surcharges in excess of assessments and held such funds as of January 1, 2009 to notify the Board, which was authorized to demand payment of such funds (within 30 days if attributable to fiscal year “2007 or before” or “as soon as practicable” if attributable to subsequent assessments) (L 2009, ch 56, § 1, part QQ, §§ 3, 4). These recouped funds were to be used to improve the Board’s services, and any balance would be transferred to the state’s general fund. In 2010, the Legislature adopted an additional uncodified statute, effective immediately, providing that windfall carriers must pay to the Board any “excess assessment funds”— defined as any amount of surcharges collected from policyholders in excess of assessments paid to the Board between April 1, 2008 and March 31, 2009 (L 2010, ch 56, § 1, part Q, § 1).
During the years relevant here, 2001 to 2010, petitioners paid the required assessments to the Board and collected surcharges from their policyholders, all in accord with the governing methodologies. In response to an inquiry, petitioners advised the Board by letter in January 2010 that they were not “affected insurance carrier[s]” (L 2009, ch 56, § 1, part QQ, § 3 [a]) but, rather, were shortfall carriers who had paid assessments exceeding surcharges collected (by $4.7 million) between 2001 and 2009. By letter of September 29, 2010, petitioners paid their September 2010 assessments under protest and formally requested a credit or refund based upon the credit/refund *76 amendment (see L 2009, ch 56, § 1, part QQ, § 1, codified in Workers’ Compensation Law § 15 [8] [h] [4] [2nd to last sentence]). On January 5, 2011, the Board’s Office of General Counsel sent petitioners an email advising that they were not entitled to a credit or refund. Petitioners then commenced this CPLR article 78 proceeding seeking, among other relief, to annul the Board’s refusal to issue a credit/refund. Supreme Court dismissed the petition, in part as time-barred and, in part, on the merits. Petitioners now appeal.
We affirm. Initially, this special proceeding was not untimely commenced. A CPLR article 78 proceeding must be commenced “within four months after the determination to be reviewed becomes final and binding upon the petitioner” (CPLR 217 [1]; see Walton v New York State Dept. of Correctional Servs., 8 NY3d 186, 194 [2007]). An administrative determination is considered “final and binding” when an agency has “reached a definitive position on the issue that inflicts actual, concrete injury” and administrative remedies have been exhausted (Matter of Best Payphones, Inc. v Department of Info. Tech. & Telecom. of City of N.Y., 5 NY3d 30, 34 [2005]).
Here, petitioners have not, in fact, challenged the assessments levied (or surcharges allowed) in any given year, the statutory methodology governing their calculations or the 2009 or 2010 legislative amendments. Rather, their challenge is premised on a claimed entitlement—based upon the 2009 amendments—to a credit/refund for the amount by which their assessments paid to the Board exceeded the surcharges collected from policyholders. Given that the Board’s January 5, 2011 notice denying their request for a credit/refund was a final and binding determination as it inflicted an actual and concrete injury on petitioners, who had exhausted their administrative remedies, this proceeding commenced May 3, 2011 was timely (see Walton v New York State Dept. of Correctional Servs., 8 NY3d at 194; Matter of Best Payphones, Inc. v Department of Info. Tech. & Telecom, of City of N.Y., 5 NY3d at 34).
Likewise, to the extent that the petition seeks relief in the nature of mandamus to compel respondents to issue the requested credit/refund, the four-month “statute of limitations [did] not begin to run until the petitioner demanded] that the official [i.e., Board] act and the official refuse[d]” (Matter of Chevron U.S.A. Inc. v Commissioner of Envtl. Conservation, 86 AD3d 838, 840 [2011]). Thus, the proceeding was timely commenced in all respects, and respondents have not demonstrated *77 either that petitioners unduly delayed commencing this proceeding or demanding a credit/refund, or prejudice from any delay, so as to support their cursory claim that the proceeding should be dismissed based upon the equitable doctrine of laches (see Saratoga County Chamber of Commerce v Pataki, 100 NY2d 801, 816 [2003], cert denied 540 US 1017 [2003]; Matter of Chevron U.S.A. Inc. v Commissioner of Envtl. Conservation, 86 AD3d at 840-841).
Addressing the merits, we find that the Board’s determination denying the requested credit/refund was not affected by an error of law, arbitrary and capricious or an abuse of discretion (see CPLR 7803 [3]; Matter of Center of Deposit, Inc. v Village of Deposit, 90 AD3d 1450, 1453 [2011]). Petitioners’ claim, distilled, is that the 2009 legislation changed the methodology for computing assessments so that “standard premiums” are used consistent with the methodology used to compute surcharges and authorized the Board to retroactively collect windfalls held by “affected insurance carriers”; further, they argue it likewise empowered the Board to issue credits/refunds “in the case of overpayments made to the fund,” and thereby retroactively adjusted the assessment load among carriers. That is, they claim that the legislation not only authorized the Board to collect excess funds from windfall carriers, but also to credit/ refund “overpayments” of assessments made by shortfall carriers such as petitioners. This broad interpretation is not supported by the statutory amendments or their legislative history and relies on unsupportable suppositions.
The credit/refund amendment on which petitioners primarily rely, codified in Workers’ Compensation Law § 15 (8) (h) (4),[3] authorizes but does not compel the Board to issue credits/ refunds “in the case of overpayments made to the fund.” At the outset, we note that petitioners have not established that their payments of assessments in excess of surcharges collected from policyholders constituted “overpayments” within the meaning of this amendment. Indeed, while the term “overpayment” is not defined, neither the former assessment statutes and NYCIRB rules nor the amended statutes and uncodified laws require that carrier assessments be exactly equal to (or no more than) surcharges collected; in fact, neither methodology *78 guarantees that result or connects a carrier’s liability to the Board for assessments with that carrier’s collection of the same level of funds in surcharges from their policyholders.
“It is a well-settled principle of statutory construction that a statute or ordinance must be construed as a whole and that its various sections must be considered together and with reference to each other” (People v Mobil Oil Corp., 48 NY2d 192, 199 [1979] [citations omitted]; see McKinney’s Cons Laws of NY, Book 1, Statutes §§ 97, 98, 130). “Also, when determining the meaning of an ambiguous statute, we will look to the practical effect given to the law by those charged with the duty of enforcing it and, if that construction is not irrational or unreasonable, it should be upheld” (Held v State of New York Workers’ Compensation Bd., 85 AD3d 35, 40 [2011] [citations omitted], appeal dismissed, lv denied 17 NY3d 837 [2011], cert denied 566 US —, 132 S Ct 1906 [2012]; see Matter of Village of Scarsdale v Jorling, 91 NY2d 507, 516 [1998]; Matter of Lezette v Board of Educ., Hudson City School Dist., 35 NY2d 272, 281 [1974]; Matter of Aides At Home, Inc. v State of N.Y. Workers’ Compensation Bd., 76 AD3d 727, 727-728 [2010]). Here, the Board rationally construed the credit/refund amendment—authorizing credits/ refunds for “overpayments made to the fund”—as referring only to overpayments made by “affected insurance carrier[s]” (i.e., windfall carriers) who are directed to pay the Board for any windfall retained in prior years, i.e., in which the surcharges exceeded assessments (L 2009, ch 56, § 1, part QQ, § 3; see Matter of Brooklyn Assembly Halls of Jehovah’s Witnesses, Inc. v Department of Envtl. Protection of City of N.Y., 11 NY3d 327, 335 [2008]). Under this interpretation, since payments to the Board by “affected insurance carrier[s]” as mandated by the amendment are ultimately transferred to the state’s general fund (L 2009, ch 56, § 1, part QQ, § 3 [b]), these are the “overpayments made to the fund” of assessments for which the Board is authorized to issue credits/refunds when excess payments by affected carriers are later detected (L 2009, ch 56, § 1, part QQ, § 1, now codified in Workers’ Compensation Law § 15 [8] [h] [4]). Thus, the credit/refund amendment, as the Board concluded, does not authorize or compel the Board to pay out to shortfall carriers the amount by which their assessments exceeded the surcharges they collected. That is, the “overpayment” provision refers to payment of excess assessments by windfall carriers beyond those properly due, and not to the proper payment of assessments by carriers relative to surcharges *79 collected. Indeed, given petitioners’ concession that the assessments they paid to the Board were properly calculated, it cannot be concluded that petitioners “overpaid” anything.
This interpretation is consistent with a corollary provision in Workers’ Compensation Law § 151 (3) (Board expenses), which provides that “[a]ny overpayment of annual assessments resulting from the requirements of this subdivision [providing for carriers to pay proportionate assessments to fund the Board’s administrative expenses] shall be refunded or[,] at the option of the chair[,] shall be applied as a credit against the assessment of the succeeding fiscal year.” Like the credit/refund amendment to Workers’ Compensation Law § 15 (8) (h) (4) governing overpayments of assessments that support the Special Disability Fund, Workers’ Compensation Law § 151 (3) authorizes the Board to credit/refund any amount it has over collected in assessments from a carrier. In both cases, the carrier’s obligation to pay assessments to the Board is not dependent upon the amount of surcharges separately collected by that carrier.
Moreover, the 2009 legislation specifically and narrowly defines “affected insurance carrier[s]” as those who collected more in surcharges than they paid in assessments (i.e., windfall carriers) and provides only for the Board to collect those excess funds from those carriers (L 2009, ch 56, § 1, part QQ, § 3 [a] [1]; [b]). No provision is made for the Board to make payments out to—or in any way credit—shortfall carriers. Similarly, the 2010 amendment narrowly provides that windfall carriers pay the Board for “excess assessment funds” for transfer to the state’s general fund. Neither set of amendments—which, significantly, were part of a deficit reduction budget plan—addresses or provides relief to shortfall carriers such as petitioners, or authorizes the Board to pay back those carriers for the amount by which their assessments exceeded surcharges collected. The Legislature’s failure to provide this relief to shortfall carriers precludes such payments (see Patrolmen’s Benevolent Assn. of City of N.Y.v City of New York, 41 NY2d 205, 208-209 [1976]; Matter of Collins v Dukes Plumbing & Sewer Serv., Inc., 75 AD3d 697, 699-700 [2010], affd 17 NY3d 906 [2011]).
Mercure, J.P., Rose, Malone Jr. and Garry, JJ., concur.
Ordered that the judgment is affirmed, without costs.

. The Superintendent of Insurance later adopted a definition of “standard premium” for purposes of these assessment statutes (see 11 NYCRR 151-6.0-151-6.2).

. Although this legislation did not directly amend Workers’ Compensation Law § 25-a (Special Fund for Reopened Cases), this section was indirectly amended because it provides that assessments are collected “in the respective proportions established in the prior fiscal year under [Workers’ Compensation Law § 151]” (Workers’ Compensation Law § 25-a [3]).

. Notably, this credit/refund provision only appears in this Special Disability Fund statute and not in statutes governing the Special Fund for Reopened Cases (see Workers’ Compensation Law § 25-a) or Board expenses (see Workers’ Compensation Law § 151 [2] [b]).