OPINION OF THE COURT
Cipakick, J.
The instant appeal pits the New York City Water Board (Water Board) against the Village of Scarsdale (Village) and the County of Westchester (County), with the New York State Department of Environmental Conservation (DEC) in the *512 middle. At issue is which governmental entity has the authority, pursuant to section 24-360 of the Administrative Code of the City of New York and section 1045-j of the Public Authorities Law, to determine the proper methodology for calculating the amount of water consumed by non-City municipalities drawing water from the New York City water supply system and to fix the rates charged for water usage.
Since 1905, the City of New York has been statutorily required to furnish quantities of water to various municipalities and water districts in certain counties north of the City in which City watershed areas and water supply facilities are located (see, Administrative Code of City of NY § 24-360 [a], [d]). In August 1991, due to rising costs, respondent Water Board petitioned respondent DEC to fix a “fair and reasonable” rate for water supplied to municipalities and districts located outside the City. The DEC declined to set a rate, explaining that pursuant to the Administrative Code and the Public Authorities Law, the Water Board had the responsibility for establishing rates for all users of the City water supply system subject to a review by the DEC of the rates charged to non-City users. After giving notice to all interested parties and conducting hearings on the rate increases, the Water Board adopted a resolution increasing water rates in two installments, effective July 1, 1992 and July 1, 1993.
The Village and County then petitioned the DEC to fix fair arid equitable rates for the water. At a DEC hearing, petitioners argued that the Water Board’s unilateral rate increase was illegal, that they were not required to pay the increased rates prior to a final determination by the DEC, and that the DEC was required to calculate water consumption and the rate charged therefor. The DEC Administrative Law Judge determined that these issues were beyond the scope of the proceeding and, thus, not appropriate for adjudication. On administrative appeal, the DEC Commissioner upheld the Administrative Law Judge’s ruling with respect to these issues and remitted the matter for further proceedings regarding the fixing of appropriate water rates.
The Village commenced this CPLR article 78 proceeding in Supreme Court, Westchester County, seeking to review the Commissioner’s determination, remittal of the matter to the DEC for a determination of the proper methodology for calculating water consumption and a determination that the Water Board’s imposition of the challenged water rate increase was unlawful. Alternatively, the Village sought a declaration *513 with respect to the same issues. The County was granted leave to intervene as a petitioner and contended that the Water Board’s unilateral imposition of rate increases was illegal.
While the proceeding in Supreme Court was pending, the DEC completed its review of the rate increase imposed by the Water Board. The Administrative Law Judge recommended a modest retroactive reduction in the rate increases imposed by the Water Board effective July 1, 1992 and July 1, 1993. In a ruling dated November 9, 1995, the Commissioner adopted the Administrative Law Judge’s recommendation and directed that the rate increases be retroactively reduced.
Several weeks later, on December 1, 1995, Supreme Court held that the DEC was the proper party to fix the rates for water usage and declared unlawful the Water Board’s imposition of increased water rates. The court also determined that the DEC had the authority to review and resolve any dispute among the parties regarding the method of calculating water usage (168 Mise 2d 1).
On appeal by the Water Board, the Appellate Division modified the judgment by declaring lawful the unilateral imposition by the Water Board of increased water rates, subject to the review mechanism set forth in Administrative Code § 24-360 (b). The Court also held that the DEC plays no role in the calculation of water consumption; that the Water Board’s determination of quantities consumed is reviewable via a CPLR article 78 proceeding in Supreme Court and that the Water Board properly calculated the entitlement amount for each of the affected municipalities. The Appellate Division further held that the DEC has the implied authority under Administrative Code § 24-360 and the Environmental Conservation Law to set the final rates for any excess water consumption (229 AD2d 101).* All parties except the DEC sought and were granted leave to appeal by this Court. We now affirm.
Statutory Background
The Water Supply Act of 1905, codified in Administrative Code § 24-360, permits the municipalities and water districts along the City of New York’s aqueduct route to obtain their water supply from the City’s water system (see, Administrative *514 Code § 24-360 [a], [d]). Subdivision (e) of section 24-360 provides a formula by which each municipal corporation or water district may take water as of right. This quantity of water, which the City is required to provide, is referred to by the parties as “entitlement water.” Water consumption over and above the entitlement amount is referred to as “excess water.”
The Code addresses only the taking of entitlement water and provides that municipalities and water districts must pay the City rates as may be agreed upon between the municipality and the City, or upon application by either party, the DEC may fix fair and reasonable rates after hearing all interested parties (Administrative Code § 24-360 [b]). Charges for water may not exceed the rates charged by New York City to persons using water in the City (Administrative Code § 24-360 [c]). Charges are determined on the basis of the actual total cost of the water to New York City, after deducting from the total costs all construction costs and expenses of operation, maintenance arid carrying charges incurred in connection with the distribution and delivery of the water within City limits (see, Administrative Code § 24-360 [c]). Rates fixed by the DEC are subject to review in Supreme Court (id,.). For some 80-odd years, the provisions of the Administrative Code exclusively governed the withdrawal of water from the City system by non-City consumers and the fees charged for withdrawals.
This changed with the enactment in 1984 of the New York City Municipal Water Finance Authority Act, now codified in the Public Authorities Law (L 1984, chs 513-515; Public Authorities Law §§ 1045-a — 1046). Enacted in the aftermath of the City’s financial crisis, the purpose of the legislation was to provide alternative financing methods for raising capital to maintain the City’s water and sewer system (L 1984, ch 513, § 1 [reprinted in Legislative Findings and Declaration of Purpose, McKinney’s Cons Laws of NY, Book 42, Public Authorities Law § 1045-a, at 601]). To achieve this purpose, the statute created the New York City Municipal Water Finance Authority (Authority) and the Water Board.
The Authority’s function is to provide revenue bond financing for improvements to the City’s water and sewer system while the Water Board’s main function is to “provide sufficient funds — through fixing and collecting water and sewer charges and other revenues — for the City to operate and maintain the Water System and for the Authority to service water and sewer debt” (Giuliani v Hevesi, 90 NY2d 27, 34). Thus, Public Authorities Law § 1045-j (1) states that “[t]he water board *515 shall establish, fix and revise, from time to time, fees, rates, rents or other charges” for use of the water system in such amounts as shall be sufficient to pay obligations on bonds issued by the Authority. The Water Board is also granted the power “[t]o establish, fix, revise, charge and collect and enforce the payment of all fees, rates, rents and other service charges for the use of, or services furnished ,by the * * * water system” (Public Authorities Law § 1045-g [4]). Prior to setting a rate, the Water Board must hold a public hearing and afford the affected public an opportunity to be heard (Public Authorities Law § 1045-j [3]).
While the Water Board is granted broad authority to set rates for water usage and is the sole entity which may do so with regard to City users, the Water Board’s authority to set rates for users outside the City is, to some extent, circumscribed by the provisions of Administrative Code § 24-360. Public Authorities Law § 1045-j (5) states that the provisions of the Administrative Code dealing with the distribution of water to non-City users “shall be deemed to apply, as appropriate, to the water board.” The statute also provides that the Water Board shall have sole authority to set rates for water usage “except with respect to the supply of water or sewerage services to users outside the city as provided in [Administrative Code § 24-360]” (Public Authorities Law § 1045-j [9]). Thus, the statutes give broad powers to the Water Board, but reserve only certain authority for the DEC.
Setting of Water Consumption Rates
All the parties agree that in the event that the Water Board and non-City communities cannot agree upon a rate for entitlement water, the DEC will ultimately determine that rate. Indeed, the DEC has done so pursuant to a petition of the County arising out of the same rate increase that is the subject matter of the instant appeal (see, Matter of New York City Water Bd. v Zagata, 240 AD2d 1005, supra [affirming rate set by DEC retroactive to 1992]). The present dispute centers on whether the Water Board may unilaterally set and implement a rate increase prior to review by the DEC, and whether the DEC has any oversight powers over excess water consumption rates.
The Village and County argue that the effect of Public Authorities Law § 1045-j (5) and (9) is to retain the powers of the DEC to set rates as stated in the Administrative Code for non-City users and that the Water Board may not unilaterally *516 increase and implement a rate prior to DEC review. The Water Board and the DEC, on the other hand, argue that the two statutes may properly be harmonized. We agree with the latter view.
Reading both statutes together, we conclude, as did the Appellate Division, that their joint effect is to authorize the Water Board to set rates after public hearings for non-City users subject to review by the DEC. Public Authorities Law § 1045-j (1) and § 1045-g (4) grant the Water Board broad powers, without exception, to set rates for all withdrawals from the City water supply system. As to City inhabitants these rates are final subject only to review in an article 78 proceeding. For non-City users, however, the effect of retaining the provisions of the Administrative Code is to preserve the role of the DEC as the final arbiter of rates. Neither section 1045-j (5) nor (9) expressly limits the Water Board’s authority to set rates but merely acknowledges the DEC’s role in rate setting for non-City users. Thus, the effect of the two statutes is to give both the Water Board and the DEC a role in setting rates for non-City users. This result is in accord with the legislative purpose of the Public Authorities Law which gives the Water Board the power to set rates for all users taking into consideration the expenses of the system including servicing of debt. At the same time, the authority of the DEC to set final rates for non-City users is retained.
The Village and County argue that, in exchange for granting the City permission to build its water supply facilities on non-City lands, the Water Supply Act of 1905 conferred upon them the right to tap into the City’s water system and to have the rates for water use set by a neutral arbiter. However, recognition of the Water Board’s authority to set the rate in the first instance in no way diminishes the DEC’s role as the final arbiter of rates. Petitioners have pointed to nothing in the legislative history of the Water Supply Act nor in the language of the statute to suggest that, in exchange for a condemnation of their lands, non-City users were guaranteed that rates would be exclusively determined by a neutral arbiter.
We also note that as a general rule, “the practical construction of the statute by the agency charged with implementing it, if not unreasonable, is entitled to deference by the courts” (Matter of Harris & Assocs. v deLeon, 84 NY2d 698, 706). Here, the DEC, charged with a rate setting function set forth in the Administrative Code and recognized in the Public Authorities Law, has determined that rates should be set initially by the *517 Water Board subject to retroactive alterations by the DEC. As noted by the DEC, because the rate is subject to a public hearing, the parties will likely develop a record which DEC could use as a basis for its determination. This interpretation is eminently reasonable especially given the Water Board’s duty to set rates sufficient to cover debt obligations (see, Public Authorities Law § 1045-j [1]). Moreover, the DEC’s practice of setting rates retroactively lessens the hardship on any party.
Although the Water Board agrees that the DEC has review powers over entitlement water rates, the Board argues that, inasmuch as the Administrative Code deals only with entitlement water, the DEC has no authority over excess water rates. We conclude otherwise. We agree with the Appellate Division that the DEC’s authority over excess consumption rates is derived from the DEC’s power to control, regulate and preserve the water resources of the entire State (see, ECL art 15), which authority is not abridged by the Public Authorities Law (Public Authorities Law § 1045-bb).
The Administrative Code only permits non-City users to take entitlement water. Therefore, users requiring water in excess of entitlement amounts must comply with the provisions of ECL article 15 which requires a permit from the DEC before taking additional water from an existing approved source (ECL 15-1501 [1] [a]). As part of the application process, and in its role as the conservator of the State’s water resources, the DEC is authorized to set conditions for the taking of such excess water (see, ECL 15-1503 [2], [4]). Thus, it is within the DEC’s power to review the rates fixed for excess water consumption by the Water Board to reflect the policy concerns of regulating and preserving the State’s water resources. We note, however, that to the extent that the DEC’s authority over excess rates is derived from the permit granting process, the DEC’s oversight role is not triggered until there has been an application for excess water.
Calculation of Water Usage
Also in dispute is the calculation of water usage. The determination of entitlement/excess water parameters is significant since the City may not charge non-City users more for entitlement water than it charges City users (see, Administrative Code § 24-360 [c]). For excess water, however, there is no such limitation on the rates that the Water Board may charge. The Village and County argue that, given the DEC’s general authority to regulate and control the State’s water resources, it *518 should, have an oversight role in determining the proper methodology for calculating water usage. We agree with the Appellate Division that there is no statutory authority for the DEC to calculate water usage. Administrative Code § 24-360 (e) deals with the calculation of water usage and provides as follows:
“The daily quantity of water which may be taken and received by any municipal corporation or water district under the provisions of this section shall not exceed the quantity calculated by multiplying the number of its inhabitants as shown by the last preceding census of the United States or the last state or official municipal census by the daily per capita consumption in the city of New York.”
Notably, neither the above-quoted provision nor any other section in the Administrative Code gives the DEC authority over the calculation of water usage. By contrast, Administrative Code § 24-360 (b) specifically gives the DEC review powers over rate setting. In the absence of express authority to calculate usage, DEC has reasonably concluded that the calculation of consumption should be left to the operator of the system, here the Water Board, which, after all, maintains the equipment and records to determine per capita usage. This result is not inconsistent with the DEC’s obligation to regulate the State’s water supply. Because the DEC has the power to impose conditions on the taking of excess water, including the resetting of rates, the DEC is still able to fulfill its role of regulating and ensuring conservation of the State’s water supply-
Conclusion
In sum, while the Water Board has the authority, pursuant to its power under the Public Authorities Law, to set rates initially, the DEC has the power to set the final rates for entitlement and excess water consumption by non-City users by virtue of its authority under the Administrative Code and the Environmental Conservation Law. However, because the DEC has no statutory authority to review the calculation of water usage by non-City users, we conclude that the Water Board’s calculation of water consumption, in accordance with the formula set forth in the Administrative Code, is subject to review by Supreme Court in an article 78 proceeding. Petitioners’ remaining arguments are either unpreserved or without merit.
*519 Accordingly, the order of the Appellate Division should be affirmed, without costs.
Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Levine and Wesley concur.
Order affirmed, without costs.

 Subsequent to the Appellate Division’s decision in the instant case, the Appellate Division, Third Department, sustained the Commissioner’s determination reducing rates charged to non-City users (Matter of New York City Water Bd. v Zagata, 240 AD2d 1005).