[718 NYS2d 306]

PERRY THOMPSON THIRD Co., Appellant, v CITY OF NEW YORK et al., Respondents.

First Department, December 19, 2000

**APPEARANCES OF COUNSEL**

*Joseph Gaier* of counsel, New York City (*Mark L. Koren* on the brief; *Joseph Gaier, P. C.,* attorney), for appellant.

*Dona B. Morris* of counsel, New York City (*Francis F. Caputo* and *Dina Mastellone* on the brief; *Michael D. Hess, Corporation Counsel* of New York City, attorney), for respondents.

## OPINION OF THE COURT

NARDELLI, J. P.

In this appeal, we are presented with the question of whether respondent the New York City Water Board exceeded its authority in adopting a resolution which, in effect, circumscribed a prior two-year back-billing limitation for unbilled water and sewer services.

## The Parties

Plaintiff-petitioner-appellant Perry Thompson Third Co. consists of a number of trusts and estates doing business as partners and owns the property designated as 159-161 East 25th Street, also known as 340 Third Avenue, New York, New York (the premises). The premises is a multiple dwelling comprised of 16 residential apartments and a retail store on the ground floor. Petitioner operates the property through Cornerstone Management Systems (Cornerstone), its managing agency.

Defendant-respondent-respondent the New York City Water Board (the Water Board), a seven-member body appointed by the Mayor, was established in 1984 pursuant to the New York City Municipal Water Finance Authority Act, codified as Public Authorities Law § 1045-a *et seq.* Defendant-respondent-respondent City of New York Department of Environmental Protection (the DEP), and its Commissioner, are responsible for, *inter alia*, "the provision of a pure, wholesome and adequate supply of water [and] the disposal of sewage." (NY City Charter § 1403.)

## The Underlying Facts

Petitioner, prior to 1992, was billed by the City of New York (the City) for water and sewage charges on a frontage basis. The City, thereafter, changed its policy in an effort to conserve water usage and required property owners to install meters so billing could be prepared on an actual use basis.[1] The petitioner thereafter installed water meters and the New York City

---

1. In pursuit of this policy, the City apparently offered a number of different incentive programs, including reimbursement for the cost of meter instal-

Department of Finance (the DOF), at approximately the same time, took over the role of issuing water and sewer bills, which task it performed until 1995. The DOF forwarded the petitioner's bills to the premises and there is no dispute that they were paid on a timely basis.

In early 1995, the DEP assumed the function of billing property owners for water consumption and sewer usage. It is clear that neither the DOF nor the DEP retained copies of the bills they issued, although an entry is made into each department's database indicating when a customer was charged for water and sewer usage.

Petitioner, from the time the DEP took over the billing process until February 1999, did not receive any bills for water and sewer usage. The DEP's records indicate that charges were posted to petitioner's account regularly from March 1995 through the February 1999 bill, but that the bills had been mailed to a David Gaier[2] at 97-40 62nd Drive, Flushing, New York, who had predeceased the 1999 invoice by approximately 11 years.

In November 1998, the DEP, in response to a returned bill,[3] updated the billing information on petitioner's account to reflect the 299 Broadway address. In February 1999, petitioner received a water bill addressed to David Gaier at 299 Broadway, New York, New York, in the amount of $61,913.42, reflecting water usage for approximately four years. The DEP's records indicate that on March 3, 1999, petitioner informed it that it had not received a bill since 1994 and that all future bills should be forwarded to Cornerstone.

## The Procedural History

By letter dated July 7, 1999, petitioner appealed the bill to DEP Deputy Commissioner Lawrence Schatt, disputing the February 1999 charges and claiming that the DEP could not back-bill for any period prior to 24 months of the current bill. Schatt, by letter dated July 9, 1999, denied the appeal and stated, *inter alia*, that in those situations where a bill is generated in the billing system and posted to a customer's account

---

lation, as well as other credits for the installation of low-usage water closets (*see, generally,* 15 RCNY, ch 42, Appendix B).

2. David Gaier was apparently the former billing agent for the premises.

3. It is unclear if any other bills were returned or, if some of the incorrectly addressed bills were returned over the three-year-and-eight-month period, why the DEP finally chose to spring into action at this particular time.

but mailed to the wrong address, the 24-month retroactive billing limitation does not apply. Instead, the full amount is due, but all late payment charges and interest that accrued during the period the bills were sent to the wrong address are forgiven. Schatt also explained that the DEP retained bill images for only the previous six bills, that its records indicated that three bills had been sent to David Gaier in Flushing in 1998, and that its database contained billing transactions from 1995 to the present.

Petitioner, on July 30, 1999, filed an appeal of the DEP's decision with Diana Chapin, Executive Director of the Water Board. Chapin, by letter dated August 30, 1999, affirmed the DEP's determination that the February 1999 bill, as adjusted, was proper. Chapin noted, *inter alia*: that the DEP records indicated the petitioner's account was billed regularly during the four years in question; that the retroactive billing limitation only applies where no bill is generated by the system; and that specifically excluded from the back-billing limitation are those instances where the mailing address or owner's name is incorrectly recorded in the system for any reason.

In September 1999, petitioner commenced what it now characterizes as a hybrid "petition-complaint," a CPLR article 78 proceeding combined with a declaratory judgment action, seeking, *inter alia*, to set aside the water and sewer charges levied against it; a declaration that the Water Board rate schedule limiting back-billing is null and void; and to enjoin respondents from billing for water charges for a period in excess of 24 months preceding the billing. The Supreme Court treated this action as an article 78 proceeding and dismissed the petition without any reference to the summons and complaint. The Supreme Court found that the Water Board rules were valid and that the back charges contained in petitioner's water and sewer bill were also valid. This appeal ensued and we now affirm.

## The Regulatory Scheme

In 1984, the New York State Legislature enacted the New York City Municipal Water Finance Authority Act (L 1984, chs 513-515; Public Authorities Law §§ 1045-a—1046) in response to the City's financial crisis. The Legislature declared that the purpose of the legislation was to provide alternative financing methods to the City for raising capital "necessary to maintain the city's water and sewer systems in an adequate condition so that they continue to provide vital water and sewer services to

the public" (L 1984, ch 513, § 1 [reprinted in Historical and Statutory Notes, Legislative Findings and Declaration of Purpose, McKinney's Cons Laws of NY, Book 42, Public Authorities Law § 1045-a, at 601]). In furtherance thereof, the Act created two entities, the New York City Municipal Water Finance Authority, which was to provide revenue bond financing in order to improve the City's water and sewer infrastructure (Public Authorities Law §§ 1045-c, 1045-d [3], [12], [14]; § 1045-o [1]); and the New York City Water Board, the main function of which was to "provide sufficient funds—through fixing and collecting water and sewer charges and other revenues—for the City to operate and maintain the Water System." (*Giuliani v Hevesi*, 90 NY2d 27, 34; *see also, Matter of Village of Scarsdale v Jorling*, 91 NY2d 507, 514.) Indeed, Public Authorities Law § 1045-g (4) provides, in pertinent part, that the Water Board has the power:

"[t]o establish, fix, revise, charge and collect and enforce the payment of all fees, rates, rents and other service charges for the use of, or services furnished by the sewerage system, water system, or both * * * so as to receive revenues which, together with other revenues available to the board * * * shall be at least sufficient at all times so that such system or systems shall be placed on a self-sustaining basis."

The New York City Water Board, Water and Wastewater Rate Schedule, which became effective July 1, 1989, provided, *inter alia*:

"*Part V - Payment Terms and Billing Limitations* * * *

"Section 4.

"The following *limitations* shall apply with *respect to rendering bills for previously unbilled service and to upward adjustments of a bill previously rendered:*

"A.  In the case of a residential customer, *no bill for previously unbilled service or upward adjustment of a bill previously issued shall be made after the expiration of twenty-four (24) months from the time service to which*

*the bill or adjustment pertains was
provided.*

*"The provisions of this section shall not apply when
the culpable conduct of a customer or a third party
caused or contributed to the failure to render timely
or accurate billing."* (15 RCNY, ch 42, Appendix A
[emphasis added].)

The language of the foregoing section parallels that of Public
Service Law § 118 (2), which provides:

"Except as provided for residential utility service
pursuant to article two of this chapter, no public
utility company or municipality may render a bill
for previously unbilled service, or adjust upward a
bill previously rendered, to a residential customer
after the expiration of twenty-four months from the
time service to which the bill or adjustment per-
tains was provided."

A review of the above sections makes it clear that, beginning
in 1989, the New York City Water Board, Water and Wastewa-
ter Rate Schedule (15 RCNY, ch 42, Appendix A) tracked the
back-billing restrictions set forth in the Public Service Law.
The Water Board, however, in an amendment which became
effective on July 1, 1998, added a definition of the term "un-
billed service" as it was to be applied in the Rate Schedule.
The Water Board maintained that the amendment was neces-
sary "to clarify the intent of the back-billing procedures fol-
lowed by the Water Board since 1990." The amendment, which
was denominated section 4 of part V (Payment Terms and Bill-
ing Limitations) of the Rate Schedule provides:

"As used in this section the term *'unbilled service'*
with respect to a property *to which service was
provided* shall refer to instances where no billing
transaction in connection *with a billing period has
been posted to the records of either the Water Board,
DEP or the Department of Finance. 'Unbilled ser-
vice' shall not refer to situations where a paper bill
was not provided, or where the U.S. Postal Service
failed to deliver a bill, or to situations where either
the owner's name or address was incorrectly re-
corded in the billing records with the result that a
bill was either not received, or was forwarded to an
incorrect party or to an incorrect address."* (Empha-
sis added.)

In a subsequent amendment which became effective July 1,
1999, the Water Board renumbered the section which set forth

back-billing procedures and further modified, and restricted, the definition thereof. Section 6 (Back Billing Limits) of part V (Payment and Billing Terms) now provides:

"As used in this section, *'Unbilled Service'* means service was provided to a property and no billing transaction for that service period *was posted to the records of either the Water Board, DEP or the Department of Finance. 'Unbilled Service' does not mean that a paper bill was not provided, or that U.S. Postal Service failed to deliver a bill, or that the owner's name or address was incorrectly recorded in the billing records with the result that a bill was not received or was forwarded to an incorrect party or to an incorrect address.* An 'Upward Adjustment' excludes situations where an erroneously canceled prior charge is reinstated. The provisions of this section do not apply when the culpable conduct of a customer or a third party caused or contributed to the failure to render timely or accurate billing.

"Premises in violation of the Certificate of Occupancy or Use, as determined by the NYC Department of Buildings, are not eligible for back billing limits. The following limitations apply with respect to rendering bills for previously Unbilled Service and to Upward Adjustments of a bill previously rendered:

"A.  No bill for previously Unbilled Service or an Upward Adjustment of a bill previously issued will be made after the expiration of two years from the time service to which the bill or adjustment pertains was provided, limited to the following customer classes:

"1.  *Residential Premises; or,*

"2.  Premises used in conformity with and classified as a type of organization that may be eligible for an exemption from water charges in accordance with New York State

law in Chapter 893 of the Laws of
1980; or,

"3.    College or school dormitories.

"B.    In the case of a commercial customer, no
bill for previously Unbilled Service or
Upward Adjustment of a bill previously
issued will be made after the expiration
of six years from the time service to
which the bill or adjustment pertains
was provided." (Emphasis added.)

## Discussion

Initially, petitioner contends that the Water Board has no inherent authority to establish limitations on the collection of fees and charges with regard to maintaining the New York City Water System. We disagree.

An administrative agency, in exercising its rule-making authority, cannot extend the meaning of the statutory language to apply to circumstances not intended to fall within the statute (*Matter of Society of N. Y. Hosp. v Axelrod*, 70 NY2d 467, 474; *Matter of Trump-Equitable Fifth Ave. Co. v Gliedman*, 57 NY2d 588, 595). Moreover, an agency may not "promulgate a rule out of harmony with or inconsistent with the plain meaning of the statutory language" (*Matter of Trump-Equitable Fifth Ave. Co. v Gliedman, supra*, at 595; *see also, Matter of United Home for Aged Hebrews v Axelrod*, 201 AD2d 656, 658, *lv denied* 83 NY2d 760).

It is clear from a reading of the applicable sections of the Public Authorities Law, however, that "the Water Board is granted broad authority" thereunder (*Matter of Village of Scarsdale v Jorling, supra*, at 515) to, *inter alia*, "fix, revise, charge and collect and enforce the payment of all fees, rates, rents and other service charges for the use of * * * [the] water system" (Public Authorities Law § 1045-g [4]); and that the Water Board "shall establish, fix and revise, from time to time, fees, rates, rents or other charges." (Public Authorities Law § 1045-j [1]). The Court of Appeals has also opined that the Water Board has the "sole authority" to set rates for water usage with regard to New York City residents (*Matter of Village of Scarsdale v Jorling, supra*, at 515).

In view of the foregoing, we find the Water Board's adoption of a regulation setting forth a back-billing limitation to be nei-

ther arbitrary or capricious nor irrational (see, generally, Kuppersmith v Dowling, 93 NY2d 90, 96), and to fall squarely within the broad powers granted that entity by the Public Authorities Law.

The petitioner also places heavy reliance on the provisions of Public Service Law § 118, as well as its legislative history.[4] It must first be noted, however, that the Public Service Law does not provide a definition for the term "unbilled service" and, as we found above, the Water Board is empowered to adopt a definition of such as part of its Water and Wastewater Rate Schedule. Moreover, the Public Service Department Rules and Regulations define a "residential customer" as:

> "any person who, in accordance with an application for service made by such person or a third party on his or her behalf, is supplied with water service by a utility at a premises where such service is used primarily for his or her residential purposes. The word *customer*, when used alone in this Part, refers only to a residential customer." (16 NYCRR 14.2 [b] [18] [reprinted in Public Service Law, Appendix, McKinney's Cons Laws of NY, Book 47].)

The petitioner, a partnership which owns a multiple dwelling/commercial building, clearly does not fall within the above definition of "residential customer" and, therefore, is not within the group the Public Service Law was designed to protect (see, Matter of Capital Props. Co. v Public Serv. Commn., 91 AD2d 726).

Accordingly, the judgment of the Supreme Court, New York County (William Davis, J.), entered on February 4, 2000, which dismissed the petition challenging respondents' determination that the petitioner was not entitled to the two-year back-billing

---

4. The Governor's Approval Memorandum states, in part, that: "This bill, introduced at the request of the Public Service Commission, amends the Public Service Law to prohibit a utility from charging a residential customer for unbilled service or from adjusting upward a previous bill for service if more than 24 months have elapsed from the time the service was provided. This time limitation would apply only to residential customers * * * A customer who receives a bill for service rendered six years ago is understandably resentful, even though the customer did use the service. By imposing a two-year limitation on backbilling for utility service, this bill protects the interests of consumers in promptly settling their accounts while at the same time providing a reasonable time for utilities to correct inaccuracies in billing." (Governor's Mem Approving L 1979, ch 223, 1979 NY Legis Ann, at 147.)

limitation for unbilled water and sewer services, should be affirmed, without costs.

ELLERIN, WALLACH, SAXE and BUCKLEY, JJ., concur.

Judgment, Supreme Court, New York County, entered February 4, 2000, affirmed, without costs.