▪ In the Matter of CITIZENS' ENVIRONMENTAL COALITION, INC., et al., Appellants, v NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION et al., Respondents. [871 NYS2d 435]—

Mercure, J.P.

In 2003, the Legislature passed the Brownfield Cleanup Program Act "to encourage [the] cleanup and redevelopment of brownfield," or hazardous waste, sites (ECL 27-1403; *see* Weinberg, Practice Commentaries, McKinney's Cons Laws of NY, Book 17½, ECL 27-1401, at 365). Under the Act, developers receive substantial tax credits and release from future liability in exchange for cleaning up brownfield sites. Respondent Department of Environmental Conservation (hereinafter DEC) is vested with the authority to implement the statute, including the authority to promulgate regulations. In 2006, DEC adopted final regulations implementing the Act (6 NYCRR part 375), and petitioners thereafter commenced this CPLR article 78 proceeding challenging subpart 375-3, which governs cleanup eligibility and site-specific remedial programs, and subpart 375-6, which establishes generic tables of contaminant-specific soil cleanup objectives (hereinafter SCOs) (*see* 6 NYCRR 375-6.8). Supreme Court granted the petition to the extent of vacating 6 NYCRR 375-3.8 (e) (4) (iii), which allowed exposed surface soils to remain at site background levels in certain instances, and otherwise dismissed the petition. Petitioners now appeal.

Initially, we agree with Supreme Court that DEC's construction of the statute is entitled to deference. Where the question presented is not one of pure legal interpretation, " 'the practical construction of the statute by the agency charged with implementing it, if not unreasonable, is entitled to deference by the courts' " (*Matter of Village of Scarsdale v Jorling*, 91 NY2d 507,

516 [1998] [citation omitted]; *see Matter of Teachers Ins. & Annuity Assn. of Am. v City of New York*, 82 NY2d 35, 41-42 [1993]; *Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459 [1980]).

Turning to the merits, petitioners first contend that DEC's regulations violate ECL 27-1415 (6) because the generic SCOs established therein expressly do not account for the impacts of soil contaminants on surface water or aquatic resources, or for the effects of soil vapor intrusion on indoor air in buildings (6 NYCRR 375-6.7 [a] [1], [3]; [b] [1]; 375-6.6 [a] [2] [ii]). As noted by petitioners, ECL 27-1415 (6) (b) provides that SCOs "shall be protective of public health and the environment pursuant to subdivision one of this section." ECL 27-1415 (1), in turn, states that "[a]ll remedial programs shall be protective of public health and the environment including but not limited to groundwater . . . ; drinking water, surface water and air (including indoor air); . . . and ecological resources, including fish and wildlife." Petitioners assert that because subdivision (6) (b) of ECL 27-1415 references subdivision (1) in mandating creation of the SCOs, DEC's regulations on SCOs must directly address *every* environmental resource listed in subdivision (1) in order to protect public health. Inasmuch as DEC's regulations expressly decline to account for the impacts of soil contaminants on surface water, aquatic resources and soil vapor despite the fact that those resources are listed in subdivision (1), petitioners assert that the regulations are inconsistent with the implementing statute and must be vacated (*see Seittelman v Sabol*, 91 NY2d 618, 625 [1998]; *Matter of Beer Garden v New York State Liq. Auth.*, 79 NY2d 266, 276-277 [1992]; *Matter of McNulty v New York State Tax Commn.*, 70 NY2d 788, 791 [1987]).

Respondents counter that DEC determined, after a multiyear effort that included the involvement of the public and consultation with the Department of Health, that any impacts on these three resources are highly variable, inherently site-specific and can be effectively addressed only through cleanup goals tailored to resources actually present at the site.* Respondents assert that the Legislature intended DEC to develop remediation

---

* Petitioners contend that this Court is barred from considering the affidavit of James Harrington, the Section Chief for the Training and Technical Support Section of the Division of Environmental Remediation within the DEC, describing the process that the DEC undertook in the promulgation of the regulations at issue, because the affidavit was not part of the "administrative record." Petitioner's argument lacks merit. This matter is not a certiorari proceeding involving a determination made after a hearing and compilation of a full administrative record; rather this proceeding sounds in mandamus to review. DEC was therefore permitted to consider "whatever evidence [was] at hand," and the affidavit of its employee describing that evidence and the pro-

programs, including but not limited to SCOs, that effectively operate together to ensure protection of public health and the environment (*see* ECL 27-1403). We agree with respondents that petitioners interpret the statute too narrowly and that, after declaring its will, the Legislature "endow[ed] [DEC] with the power to fill in the interstices in the legislative product by prescribing rules and regulations consistent with the enabling legislation" (*Matter of Nicholas v Kahn*, 47 NY2d 24, 31 [1979]).

In our view, DEC rationally determined, consistent with the statute's mandate that site-specific programs in conjunction with the SCOs ensure protection of public health and the environment (*see* ECL 27-1415 [1]), that the development of generic SCOs for surface water, aquatic resources and indoor air would have been impractical and ineffective to achieve protection of the public health. As explained in an affidavit submitted by DEC, sites that do possess surface waters and aquatic resources display a wide range of characteristics affecting the degree to which soil contamination may impact these resources, such that generic SCOs would be inappropriate and insufficiently protective at many sites. Similarly, because the level of soil contamination at a site does not determine the level of vapor intrusion—and even low-level concentrations of contaminants in soil do not ensure the absence of vapor intrusion exposure—DEC requires an evaluation of vapor intrusion pathways at all sites, regardless of the magnitude of soil contamination. Indeed, contamination of surface water, aquatic resources and indoor air are extensively addressed in regulations governing site-specific remedial programs, which require mitigation of impacts on these resources as an element of the cleanup remedy at any site (6 NYCRR 375-1.8 [a] [6]; 375-3.8 [a]; 375-6.7 [a] [2], [3]; [b] [3] [ii]). According deference to DEC's determination in its area of technical expertise, petitioners have failed to establish that DEC was required to develop SCOs to account for soil contamination impacts on surface water, aquatic resources or indoor air, or that the challenged regulations do not adequately protect the public health and the environment, including the resources at issue, as mandated by the implementing statute.

We further reject petitioners' argument that DEC did not comply with ECL 27-1415 (6) (b) (v) because it failed to identify and account for more stringent cleanup levels that may have

cess through which DEC made its determination is properly before us (*see Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs.*, 77 NY2d 753, 757-758 [1991]; *377 Greenwich LLC v New York State Dept. of Envtl. Conservation*, 14 Misc 3d 417, 426 [2006]).

been achieved in prior remediations. ECL 27-1415 (6) (b) (v) provides that in developing SCOs, DEC must consider "the feasibility of achieving more stringent remedial action objectives, based on experience under the existing state remedial programs, particularly where toxicological, exposure, or other pertinent data are inadequate or nonexistent for a specific contaminant." Nothing in the statute requires DEC to perform a comprehensive analysis of all historically achieved cleanup levels; rather, the statute requires only that DEC consider "the feasibility" of achieving more stringent SCOs in light of its past experience (ECL 27-1415 [6] [b] [v]). Affidavits from DEC and Department of Health employees describing the process by which SCOs were developed indicate that the two agencies developed a list of 86 priority chemicals most commonly identified at contaminated sites, utilized their expertise to determine that toxicological and exposure data were adequate, developed SCOs for the protection of human health and ecological resources, and compared the SCOs to the standards applied by DEC in designing cleanup remedies under other state environmental remediation programs. Inasmuch as the record reveals that DEC complied with the statutory requirement that it consider the feasibility of setting more stringent SCOs in light of the adequacy of available data and standards developed based on its experience under other state remedial programs, it cannot be said to have acted arbitrarily and capriciously in this regard.

Finally, we agree with Supreme Court that 6 NYCRR 375-3.3 (a) (2), which specifies that DEC "shall consider only contamination from on-site sources" in determining which sites are eligible for the program, does not contravene the statute. Petitioners maintain that the exclusion of properties contaminated by off-site sources is contrary to the statute both because the Legislature did not include an express exclusion therein and because the statute broadly defines a "Brownfield site" as "any real property, the redevelopment or reuse of which may be complicated by the presence or potential presence of a contaminant" (ECL 27-1405 [2]). Given the lack of any language in the statute directly addressing the issue, the statutory focus on removal of the source of contamination through remediation programs (*see* ECL 27-1415 [5], [5-a]), and the separate enforcement mechanisms where contamination has been caused by off-site sources (*see* ECL 27-1411 [1] [c]; [5]), Supreme Court properly concluded that 6 NYCRR 375-3.3 (a) (2) constitutes a rational determination that the goals of the statute are best served by addressing contamination at its source.

In sum, inasmuch as DEC complied with the statute in

promulgating the generic SCOs and the regulatory exclusion of properties contaminated by off-site sources, we cannot say that the regulations at issue are irrational and, thus, the partial dismissal of the petition must be affirmed.

Spain, Carpinello, Kane and Kavanagh, JJ., concur. Ordered that the judgment is affirmed, without costs.