[921 NYS2d 674]

WILLIAM HELD JR., as Chairman of Contractors Compensation Trust, et al., Respondents-Appellants, v STATE OF NEW YORK WORKERS' COMPENSATION BOARD et al., Appellants-Respondents.

Third Department, April 21, 2011

36

## APPEARANCES OF COUNSEL

*Eric T. Schneiderman, Attorney General*, Albany (*Paul Groenwegen* of counsel), for appellants-respondents.

*Patterson, Belknap, Webb & Tyler, L.L.P.,* New York City (*Stephen P. Younger* of counsel), for respondents-appellants.

*Fulbright & Jaworski, L.L.P.,* New York City (*Glen Banks* of counsel), for Business Council of New York Workers Compensation Trust Manufacturers Group, amicus curiae.

*Murtagh, Cohen & Byrne,* Rockville Centre (*Edward T. Byrne* of counsel), for Electrical Employers Self Insurance Safety Plan, amicus curiae.

### OPINION OF THE COURT

ROSE, J.

#### I.

Our Workers' Compensation Law requires employers to secure the payment of compensation to their employees either through the State Insurance Fund, by purchasing an insurance policy or by self-insurance (*see* Workers' Compensation Law § 50). The option of self-insurance has long been available to individual employers whose financial resources are large enough for them to qualify (*see* Workers' Compensation Law § 50 [3]). In 1966, the Legislature added subdivision (3-a) to Workers' Compensation Law § 50 to permit smaller employers in similar fields to exercise the privilege of self-insurance by joining together as members of group self-insured trusts (*see* L 1966, ch 895, § 2; ch 896, § 2). Plaintiffs are a number of such groups. They commenced this action in 2008 to challenge the constitutionality of certain annual assessments against them by defendant State of New York Workers' Compensation Board, including assessments imposed pursuant to Workers' Compensation Law § 50 (5) (former [f]) and (g) to cover the cost of the Board's payment of the compensation liabilities of defaulted groups.[1] Workers' Compensation Law § 50 (5) (former [f]) authorized the Board to levy assessments "against all private self-insured employers" whenever it was determined that workers' compensation benefits "may be unpaid by reason of the default of an insolvent private self-insured employer." These assessments were levied in accordance with the Board's authority to assess all self-insurers for the total amount of its costs and expenses incurred in carrying out the self-insurance provisions of the Workers' Compensation Law (*see* Workers' Compensation Law § 50 [5] [c], [e]).

---

1. We previously dismissed plaintiffs' appeal in their companion CPLR article 78 proceeding (*Matter of Held v New York State Workers' Compensation Bd.,* 58 AD3d 971 [2009]).

During the pendency of this action, the Legislature amended the Workers' Compensation Law by, among other things, relabeling Workers' Compensation Law § 50 (5) (former [f]) as (g) and confirming the Board's authority to impose assessments pursuant to that provision against group self-insurers by expressly including them within the meaning of the term "self-insured employers" (*see* L 2008, ch 139, § 3). The Legislature also amended the Workers' Compensation Law by altering the formula used to determine each active and inactive group's share of assessments (*see* L 2008, ch 139, § 3). Plaintiffs then amended their complaint to add a challenge to the constitutionality of the amended statutes, and the parties cross-moved for summary judgment. Supreme Court granted plaintiffs' motion for summary judgment as to their claim that the assessments under Workers' Compensation Law § 50 (5) (former [f]) and (g) violated the Takings Clauses of the State and Federal Constitutions, and otherwise granted defendants' cross motion for summary judgment dismissing the complaint as to all of the other challenged provisions of the Workers' Compensation Law. Supreme Court also entered a judgment requiring defendants to repay the assessments collected from plaintiffs. Defendants appeal from that judgment and from Supreme Court's ruling that the application of Workers' Compensation Law § 50 (5) (former [f]) and (g) results in an unconstitutional taking, and plaintiffs cross-appeal from all other aspects of the orders.

## II.

As a starting point, plaintiffs contend that Workers' Compensation Law § 50 (5) (former [f]) did not authorize the Board to levy assessments against them for the unpaid compensation and benefits owed by defaulted group self-insurers. They argue that former paragraph (f) refers to "private self-insured employers," and groups are not included in that term because, while groups are self-insurers whose members are employers, they are not themselves employers. Plaintiffs note that the undisputed purpose of group self-insurance is to allow employers who are too small to self-insure individually to take advantage of the savings offered by self-insurance by forming groups of employers in related fields, and that each employer-member of a group agrees to be jointly and severally liable for the obligations of the group. They claim that this purpose is defeated by defendants' interpretation of the statute because it would permit the Board to assess solvent groups for its costs incurred by paying the

compensation liabilities of defaulted groups in unrelated fields. Plaintiffs also claim that the Board never previously applied the statute in this manner, that they had no notice that they would be liable for the benefits owed by defaulted groups and that the Board's interpretation will result in groups being unable to afford to continue to self-insure in the future. Given these contentions, the nature of the constitutional arguments made and the parties' request, we first determine the proper construction of Workers' Compensation Law § 50 (5) (former [f]).

■ "It is a well-settled principle of statutory construction that a statute or ordinance must be construed as a whole and that its various sections must be considered together and with reference to each other" (*People v Mobil Oil Corp.*, 48 NY2d 192, 199 [1979] [citations omitted]; *see* McKinney's Cons Laws of NY, Book 1, Statutes §§ 97, 98, 130). Also, when determining the meaning of an ambiguous statute, we will look to the practical effect given to the law by those charged with the duty of enforcing it and, if that construction is not irrational or unreasonable, it should be upheld (*see Matter of Village of Scarsdale v Jorling*, 91 NY2d 507, 516 [1998]; *Matter of Lezette v Board of Educ., Hudson City School Dist.*, 35 NY2d 272, 281 [1974]; *Matter of Aides At Home, Inc. v State of N.Y. Workers' Compensation Bd.*, 76 AD3d 727, 727-728 [2010]). In our view, a fair reading of Workers' Compensation Law § 50 (5) (former [f]), within the context of the related provisions and the legislative history, leads to the conclusion that group self-insurers were intended to be included among those to be assessed to provide the funds to cover the defaults of all private self-insurers, including groups.

Since its enactment in 1966, Workers' Compensation Law § 50 (3-a) has made group self-insurers part of the self-insurance program—which then consisted of large individual self-insured employers only—by subjecting groups to the same statutory provisions governing self-insured employers. As argued by defendants, the new statute accomplished this by specifically providing that "[a]ll the provisions of this chapter relating to self-insurance and the rules and regulations promulgated thereunder shall be deemed applicable to group self-insurance" (Workers' Compensation Law § 50 [3-a] [former (6)], [8]). Among the provisions relating to self-insurance and, therefore, deemed applicable to group self-insurance is Workers' Compensation Law § 50 (5) (former [f]). It was enacted in 1976, prior to the formation of any of the plaintiffs, and its legislative history

persuades us that it was intended to apply to all self-insurers (*see* L 1976, ch 942, § 1). The statute was proposed by the Board, and its purpose, as stated in the Board's memorandum in support, was to establish "a method for paying claims which are the liability of an insolvent self-insurer out of administrative assessments to be levied against all private self-insurers" (Mem of Workmen's Comp Bd, Bill Jacket, L 1976, ch 942, 1976 NY Legis Ann, at 311).

Further, the legislative history of the 2008 amendments to the Workers' Compensation Law confirms that group self-insurers were always intended to be included among the self-insured employers against whom assessments could be imposed pursuant to Workers' Compensation Law § 50 (5) (former [f]). Governor's Program Memorandum # 70 makes clear that the amendment to former paragraph (f) was intended to clarify the fact that the Board was always authorized to impose assessments with respect to both individual and group self-insurers (*see* Governor's Program Mem # 70, L 2008, ch 139, 2008 NY Legis Ann, at 103). Contrary to plaintiffs' assertion, this memorandum indicating the purpose of the 2008 legislation is relevant and we may consider it in interpreting former paragraph (f) (*see Matter of OnBank & Trust Co.*, 90 NY2d 725, 731 [1997]; *see also Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 585 [1998]). Plaintiffs' reliance on *Matter of New York Times Co. v New York State Dept. of Health* (243 AD2d 157, 160 [1998]) is misplaced, as we are not presented here with judicial review of an administrative determination (*see e.g. Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs.*, 77 NY2d 753, 758 [1991]; *Matter of Moynihan v Moyers Corners Fire Dept.*, 254 AD2d 584, 585 [1998]).

Nor can we agree with plaintiffs' argument that the statute was never previously applied in this manner by the Board. Since the inception of self-insurance, all self-insurers have been subject to assessments by the Board to recover its administrative expenses (*see* Workers' Compensation Law § 50 [5] [former (c)], [c]). As the record reveals, these assessments have always included the expenses of the Board in covering the compensation liabilities of defaulted private self-insurers. These assessments have been billed to self-insurers, including plaintiffs, under the general category of administrative assessments. Whenever a private self-insurer defaulted, assessments were levied on all private self-insurers, including self-insured groups, to cover the Board's payment of the liabilities of the defaulted

self-insurer. It is true, however, that the Board did not include assessments to cover its payment of the insolvent groups until 2007, after the first groups defaulted. When additional groups defaulted in that year, the assessment amounts increased dramatically in 2008, leading plaintiffs to bring this action. In view of this background, plaintiffs' argument that assessments to cover defaulted groups were never previously imposed, while true, rings hollow as they do not dispute that groups had never previously defaulted. Further, plaintiffs do not deny that they have always been assessed to cover defaulted individual self-insured employers.

We also reject plaintiffs' assertion that an interpretation allowing assessments against all self-insurers is inconsistent with the contractual obligation of joint and several liability assumed by the individual members of a group self-insurer. Although each member of a group self-insurer is jointly and severally liable for the compensation obligations of all other members of that group, the Board also is authorized to recoup from each self-insurer its pro rata share of the administrative expenses incurred by the Board in fulfilling its mission of providing "a swift and sure source of benefits to injured" workers (*Crosby v State of N.Y., Workers' Compensation Bd.*, 57 NY2d 305, 313 [1982]). Thus, the joint and several liability of each member is separate and distinct from the imposition, on a pro rata basis, of administrative expenses on the group. As defendants persuasively argue, the Board's collection efforts and litigation against defaulted groups will take time and the statutorily authorized imposition of assessments is an available means to cover any shortfall in funds in the meantime. Plaintiffs' arguments as to the wisdom of the Board's actions and their effect on the willingness of employers to form new self-insurance groups in the future are irrelevant to the issue of whether they are authorized by the statute and whether the statute is constitutional.

### III.

Turning to the constitutional issues, we must disagree with Supreme Court's conclusion that defendants' application of Workers' Compensation Law § 50 (5) (former [f]) and (g) was an unconstitutional taking.[2] The Takings Clause of the Fifth Amendment, made applicable to the states through the Four-

---

**2.** Plaintiffs' state constitutional claims are precluded by the "broad and unencumbered authority to enact laws for the protection of employees"

teenth Amendment, provides that private property shall not be taken for public use without just compensation. "Governmental regulation of private property effects a taking if it is 'so onerous that its effect is tantamount to a direct appropriation or ouster' " (*Consumers Union of U.S., Inc. v State of New York*, 5 NY3d 327, 357 [2005], quoting *Lingle v Chevron U. S. A. Inc.*, 544 US 528, 537 [2005]). While there is no set formula to determine whether a statute "goes too far and effects a regulatory taking," the primary factors to consider are its "economic effect on the [property owner], the extent to which the regulation interferes with reasonable investment-backed expectations, and the character of the government action" (*Palazzolo v Rhode Island*, 533 US 606, 617 [2001]; *see Penn Central Transp. Co. v New York City*, 438 US 104, 124 [1978]). Plaintiffs bear "the heavy burden" of showing that the statutory provisions work a regulatory taking (*Buffalo Teachers Fedn. v Tobe*, 464 F3d 362, 375 [2d Cir 2006], *cert denied* 550 US 918 [2007]).

■ Here, the amounts of the assessments may have been unanticipated, but it cannot be said that their economic effect on plaintiffs rises to the level of a taking. While plaintiffs may be deprived of substantial amounts of money to pay the assessments, their liability "is not made in a vacuum, [and] directly depends on" their proportional role in the self-insurance program and the workers' compensation system (*Connolly v Pension Benefit Guaranty Corporation*, 475 US 211, 225 [1986]; *see* Workers' Compensation Law § 50 [5] [c], [g]; *see also* L 2008, ch 139, § 3; L 2007, ch 6, § 65). The statutory language provided—and still provides—that costs associated with defaulting self-insurers are to be assessed against all self-insurers, and there is no dispute that plaintiffs are self-insurers. Nor is the levying of assessments against self-insurers inconsistent with other provisions of the Workers' Compensation Law, which employs such a mechanism against employers and insurance carriers to recoup the system's expenses (*see e.g.* Workers' Compensation Law § 15 [8] [h]; § 25-a [3]; § 151 [2]). We are, therefore, persuaded that the economic effect on plaintiffs is consistent with the overall legislative scheme and is proportional to their role as self-insurers within the workers' compensation system (*see Concrete Pipe & Products of Cal., Inc. v Construc-*

provided in NY Constitution, article I, § 18 (*Matter of Valentine v American Airlines*, 17 AD3d 38, 41 [2005]; *Matter of Estate of Smith v Atlas Assembly/ Crawford Furniture Mfg. Corp.*, 216 AD2d 804, 806 [1995], *lv denied* 86 NY2d 711 [1995]).

*tion Laborers Pension Trust for Southern Cal.*, 508 US 602, 645 [1993]; *Connolly v Pension Benefit Guaranty Corporation*, 475 US at 225-226).

We are also persuaded that the application of Workers' Compensation Law § 50 (5) (former [f]) and (g) does not interfere with plaintiffs' reasonable investment-backed expectations. As we have found, the enforcement of the statute is consistent with the legislative scheme which, in turn, is sufficiently clear from the language of the statute. Accordingly, plaintiffs knew or should have known of their liability for administrative expense assessments (*see e.g. Connolly v Pension Benefit Guaranty Corporation*, 475 US at 227 [no interference with reasonable investment-backed expectations where employers "had more than sufficient notice not only that pension plans were currently regulated, but also that withdrawal itself might trigger additional financial obligations"]; *Meriden Trust & Safe Deposit Co. v Federal Deposit Ins. Corp.*, 62 F3d 449, 455 [2d Cir 1995] [no unconstitutional taking occurs where a company "voluntarily subject(s) itself to a known obligation"]). Plaintiffs, as voluntary participants who have elected to exercise the privilege of self-insurance, cannot now complain that the assessments imposed to administer the self-insurance program consistently with the purpose and goals of the workers' compensation system is an unexpected taking of their property.

Further, the character of the government action at issue here is a public program adjusting the benefits and burdens of economic life to promote the common good and, as such, is not generally the type of regulation considered to rise to the level of a taking (*see Lingle v Chevron U. S. A. Inc.*, 544 US at 539; *Penn Central Transp. Co. v New York City*, 438 US at 124; *cf. Eastern Enterprises v Apfel*, 524 US 498, 529-537 [1998]). Thus, based on our evaluation of the statute and the factual circumstances as revealed in the record, we conclude that Workers' Compensation Law § 50 (5) (former [f]) and (g) do not violate the Takings Clause and that defendants' cross motion for summary judgment dismissing that claim should have been granted.

■ We next find no merit to plaintiffs' claims of unconstitutionality under the Due Process Clause of the Fifth Amendment. Economic legislation is presumed to be constitutional, and "the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way" (*Usery v Turner Elkhorn Mining Co.*, 428 US 1, 15 [1976]). Here, plaintiffs claim that the statute violates

due process because it was impermissibly vague, provided no notice and was retroactively applied to them after the 2008 amendment. Given our conclusion as to the interpretation of Workers' Compensation Law § 50 (5) (former [f]), however, we find that it was sufficiently clear, to a reasonable degree of certainty, so that plaintiffs were not forced to guess at its meaning (*see Matter of Kaur v New York State Urban Dev. Corp.*, 15 NY3d 235, 256 [2010], *cert denied* 562 US —, 131 S Ct 822 [2010]; *Foss v City of Rochester*, 65 NY2d 247, 253 [1985]). Further, inasmuch as the statute has authorized the assessments at issue since its enactment in 1976, prior to plaintiffs' existence, they had notice of it and it was not retroactively applied to them. For this same reason, the statute does not violate the Contracts Clause (*see* US Const, art I, § 10), as a "statute cannot be said to impair a contract that did not exist at the time of its enactment" (*Texaco, Inc. v Short*, 454 US 516, 531 [1982]; *see Matter of George [Catherwood—General Motors Corp.]*, 14 NY2d 234, 242 [1964]).

IV.

Plaintiffs' remaining claims, as limited by their brief, are that Workers' Compensation Law § 15 (8) (h) (4) and § 151 (2) (b), as amended in 2008, are in violation of the Due Process and Takings Clauses of the Fifth Amendment. These statutes, among other things, provide the formula to impose continuing assessments, decreasing over time, on inactive self-insurers for the Special Disability Fund and the Board's administrative expenses. Plaintiffs argue that the 2008 amendments impose an unfair exit penalty. Based upon the history of these statutes, we cannot agree. Prior to 2007, these statutes imposed continuing assessments on inactive groups in recognition of their continuing liability for compensation and benefits. In 2007, the statutes were amended to change the method for determining the amounts owed from a calculation based on benefits paid the preceding year to a calculation based on annual payroll for the preceding year. The 2008 amendments again changed the calculation, in part to correct an apparent error in the 2007 amendments allowing inactive groups to completely avoid liability for the assessments after one year of inactivity, despite their continuing—although decreasing—liability for compensation and participation in the program (*see* Governor's Program Mem # 70, L 2008, ch 139, 2008 NY Legis Ann, at 103). Accordingly, the calculation is now based on payroll at the time the in-

dividual or group self-insurer ceases to self-insure, reduced by a factor reflecting the reduction in compensation liabilities since becoming inactive (*see* L 2008, ch 139, §§ 7, 15).[3] Plaintiffs' specific challenge to the use of the decreasing claims factor was not raised before Supreme Court and is, therefore, unpreserved for our review (*see Matter of Jennings v Lippman*, 307 AD2d 457, 458 n 2 [2003], *lv denied* 100 NY2d 515 [2003]).

■ Nor can we agree that the 2008 amendments improperly alter plaintiffs' liability without notice or justification. There is no requirement to provide notice of enactment of a statute beyond the normal process of enactment, publication and an opportunity for those within the statute's reach to become familiar with its requirements and to comply with them (*see Atkins v Parker*, 472 US 115, 129-131 [1985]; *United States v Locke*, 471 US 84, 108 [1985]). Thus, the due process challenge to the adjustment of the formula used to determine assessments is without merit, as "legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations" (*Concrete Pipe & Products of Cal., Inc. v Construction Laborers Pension Trust for Southern Cal.*, 508 US at 637 [internal quotation marks and citations omitted]). In any event, as we have noted, the legislative history of the 2008 amendments makes clear that, to the extent that the 2007 amendments apparently limited an inactive group's assessments to one year, the limitation was an error, it was promptly corrected and it cannot be viewed as a settled expectation.

Plaintiffs' claim that the 2008 amendments deprive them of due process because they are unfairly subjected to double assessments is also without merit. Although former members of an inactive group will continue to be responsible for their part of the group's continuing assessment as well as having to pay their workers' compensation insurance premiums, a part of which pays the similar assessments on the carrier, the inactive group's assessment is expressly reduced over time based on the group's diminishing compensation liabilities. The assessments are therefore proportional to plaintiffs' compensation liabilities, and plaintiffs have neither established that the amendments are irrational or arbitrary, nor met their burden of demonstrating a due process violation (*see Concrete Pipe & Products of*

---

**3.** Although the statutes were amended again effective March 31, 2011, with the term "self-insurer" redefined so as to exclude inactive group self-insurers from the assessments, the amendments are prospective only and do not affect our analysis (*see* L 2011, ch 57, § 1, part G, §§ 1, 7).

*Cal., Inc. v Construction Laborers Pension Trust for Southern Cal.*, 508 US at 639-641; *Usery v Turner Elkhorn Mining Co.*, 428 US at 15).

Finally, as for plaintiffs' claim that the 2008 amendments effect a taking, they acknowledge that, prior to 2007, inactive groups were responsible for paying continued assessments based on claims that accrued while they were self-insured. The continuation of that responsibility, albeit by a different calculation, does not interfere with any reasonable investment-backed expectation and, as the assessments are applied to all self-insurers and insurance carriers in the workers' compensation system, they cannot be said to have a disproportionate effect on plaintiffs (*see Concrete Pipe & Products of Cal., Inc. v Construction Laborers Pension Trust for Southern Cal.*, 508 US at 646; *Connolly v Pension Benefit Guaranty Corporation*, 475 US at 223).

KAVANAGH, McCARTHY and EGAN JR., JJ., concur; CARDONA, P.J., not taking part.

Ordered that the order, amended order and second amended order are modified, on the law, without costs, by reversing so much thereof as partially granted plaintiffs' motion for summary judgment and partially denied defendants' cross motion for summary judgment; motion denied in its entirety, cross motion granted in its entirety, summary judgment awarded to defendants and complaint dismissed; and, as so modified, affirmed.

Ordered that the judgment is reversed, on the law, without costs.