1211 W. Ave. Prop. Assoc., LLC v Trinity Bldg. & Constr. Mgt. Corp. (2024 NY Slip Op 50190(U))

[*1]

1211 W. Ave. Prop. Assoc., LLC v Trinity Bldg. & Constr. Mgt. Corp.

2024 NY Slip Op 50190(U)

Decided on February 15, 2024

Supreme Court, Albany County

Platkin, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 15, 2024
Supreme Court, Albany County

1211 Western Avenue Property Associates, LLC, Petitioner,

against
Trinity Building & Construction Management Corp., Respondent.

Index No. 906439-23

Barclay Damon LLP
Attorneys for Petitioner
(James P. Domagalski and Nicholas J. DiCesare, of counsel)
The Avant Building 
200 Delaware Avenue, Suite 1200 
Buffalo, New York 14202
Clark Guldin Attorneys at Law 
Attorneys for Respondent
(Jonathan T. Guldin, of counsel)
20 Church Street, Suite 15 
Montclair, New Jersey 07042 
and 
242 West 36th Street, 9th Floor 
New York, New York 10018

Richard M. Platkin, J.

Petitioner 1211 Western Avenue Property Associates, LLC brings this proceeding under CPLR 7503 (b), seeking to permanently stay the arbitration demanded by respondent Trinity Building and Construction Management, Corp. ("Trinity"). Trinity opposes the application.
BACKGROUND
On March 31, 2021, petitioner 1211 Western Avenue Property Associates, LLC ("1211 Western" or "Owner") contracted with Trinity, a general contractor, for the construction of a six-story apartment complex located at 1211 Western Avenue, Albany, New York ("Project") (see NYSCEF Doc No. 1 ["Petition"], ¶ 15; NYSCEF Doc No. 3 ["Contract"]). The original contract price of $26,600,000 was increased to $28,019,584 by an amendment to the Contract dated July 25, 2022 (see Contract, Prime Contract Amendment ["Amendment"]).
On March 7, 2023, 1211 Western terminated Trinity for convenience under Section 14.4 of the Contact, citing "numerous issues with Trinity's performance as well as Trinity's apparent mismanagement of Project funds," including its alleged failure to pay subcontractors and [*2]suppliers (Petition, ¶¶ 16-19, 23-28, 34; see NYSCEF Doc No. 4).
Trinity responded to the termination by: (i) asserting that 1211 Western had failed to timely pay four applications (Pay Apps No.27-30), (ii) filing an additional pay application (Pay App #31) for the remaining Contract balance, and (iii) filing a mechanic's lien against the Project in the sum of $5,715,228 (see Petition, ¶¶ 21-22, 29-36; NYSCEF Doc No. 5). Some of Trinity's subcontractors and suppliers also filed liens against the Project, and one such subcontractor commenced an action in this Court to recover the balance of funds due under its subcontract (see Petition, ¶¶ 37-39; see also AAA Reinforcing, LLC v Trinity Building and Construction Management, Corp., Index No. 903656-23).
On June 16, 2023, Trinity served a demand on 1211 Western for arbitration with the American Arbitration Association ("AAA") pursuant to General Business Law ("GBL") § 756, et seq., also known as the Prompt Payment Act ("PPA"), claiming that Pay Apps #27-30 were not paid in accordance with the PPA (see Petition, ¶¶ 1-2; NYSCEF Doc No. 2 ["Demand"]).[FN1]

1211 Western commenced this proceeding to permanently stay the arbitration, arguing that Trinity is attempting "to circumvent the dispute resolution requirements of the Contract through an incorrect application of the PPA, which itself is unconstitutional" (Petition, ¶ 3; see Contract, § 20.2). The Court granted a temporary restraining order staying the arbitration pending determination of the application for a permanent stay (see NYSCEF Doc No. 11). 
The parties were referred to early mediation (see NYSCEF Doc No. 23), but efforts to resolve the underlying contractual disputes proved unsuccessful (see NYSCEF Doc No. 29). This Decision, Order & Judgment follows.
THE PARTIES' CONTENTIONS
A. 1211 Western's Position
At the outset, 1211 Western emphasizes the parties' agreement to resolve all disputes arising from or related to the Contract by "reference to judicial process," with exclusive jurisdiction and venue being "a court of competent jurisdiction located in the State of New York, County of New York" (Contract, § 20.2; see Petition, ¶ 5).
1211 Western recognizes, as it must, that the PPA permits an "aggrieved [contractor to] refer the [prompt payment dispute] . . . to the [AAA] for an expedited arbitration" (GBL § 756-b [3] [c]), and it declares "void and unenforceable" any contractual provision that renders expedited arbitration unavailable (id. § 757 [3]).
But 1211 Western contends that the PPA "cannot be used to resolve the issue of whether or not a contractor is entitled to payment of any invoice or pay application of disputed invoices" (Petition, ¶ 51). According to 1211 Western, the PPA sets forth only "narrow 'obligations' relating to the 'payment cycle' for construction projects—the submission of invoices by the contractor and responses by the owner. The remedies allowed for under the PPA are similarly limited—interest in the event an owner fails to comply with the timing requirements set forth in the statute as well as the ability of the contractor to stop work if they have not received payment per the statutory time periods" (NYSCEF Doc No. 8 ["MOL"] at 1-2).
"Notwithstanding the limited applicability of the PPA, Trinity is seeking to utilize the 'PPA arbitration' as the means for resolving the ultimate dispute between the parties. That is, while Trinity's arbitration demand alleges that the arbitration is based on violation of the PPA, the remedy sought by Trinity is payment of all amounts that Trinity claims it is owed for the project. That is simply not a 'PPA dispute.' It is a breach of contract dispute that falls entirely outside the scope of the PPA and should be governed by the parties' contract" (id. at 2).
1211 Western further contends that the PPA violates the Contracts Clause of the United States Constitution and is also unconstitutionally vague. 
B. Trinity's Position
Trinity argues that the plain language of the PPA entitles it to expedited arbitration of its [*3]claim that 1211 Western violated the PPA with respect to Pay Apps #27-30 (see Demand; see also n 1, supra).
Trinity also emphasizes 1211 Western's contractual agreement to comply with the PPA: "'Time frames pertaining to the approval of pencil requisitions remitted by Owner shall conform with all provisions of the [PPA], the requirements of which shall govern the schedule of payments by Owner to [Trinity]'" (NYSCEF Doc No. 13 ["Opp Mem"] at 15, quoting Amendment, ¶ 6).
ANALYSIS
A. Scope/Applicability of the PPA
The PPA establishes procedures for the submission and payment of contractor invoices in construction projects. Upon receiving an invoice, the owner of a private construction project shall "approve or disapprove" the invoice within a prescribed timeframe (GBL § 756-a [2] [a] [i]). Grounds for disapproval include "[u]nsatisfactory or disputed job progress" and the contractor's "[f]ailure to comply with other material provisions of the construction contract" (id. § 756-a [2] [a] [i] [1], [4]). A project owner may not "unreasonably withh[o]ld" approval or "in bad faith disapprove all or a portion of an invoice," and the owner must "prepare and issue a written statement" justifying any disapproval (id. § 756-a [2] [a] [i]).
The text of the PPA establishes three remedies for a contractor aggrieved by an owner's violation of the foregoing statutory provisions. First, the owner becomes liable to the contractor for interest on amounts not timely paid (see id. § 756-b [1] [a]). Second, the contractor may suspend its own performance if the owner fails to timely act on an invoice or pay an "undisputed invoice amount" (id. § 756-b [2] [a] [i]). Finally, after serving a "written complaint . . . that an owner has violated" the PPA and "attempt[ing] to resolve the matter" with the owner (id. § 756-b [3] [a]), the contractor "may refer the matter . . . to the [AAA] for an expedited arbitration" (id. § 756-b [3] [c]).
Here, Trinity requested payment of $5,715,228 through Pay Apps #27-31, which were submitted to 1211 Western between December 5, 2022 and April 17, 2023 (see Petition, ¶¶ 21-31). 1211 Western declined to pay any portion of these invoices on the ground that "Trinity has failed to provide . . . documents sufficient . . . to verify the payment claims" (id., ¶ 32; see NYSCEF Doc Nos. 20-21). Trinity contends that the Owner's refusal "to timely remit payment" violates the PPA (NYSCEF Doc No. 18, ¶ 35; see Petition, ¶ 21; Demand), and, after attempts at resolution by the parties (see NYSCEF Doc Nos. 15-17), Trinity demanded arbitration of the PPA claim.
"As the plain language of the PPA makes clear, [its] dispute resolution provisions are triggered by the mere allegation that the [owner] has violated the statute, and thus, whether [the owner] has actually done so is a question best left to arbitration" (Pike Co., Inc. v Tri-Krete Ltd., 349 F Supp 3d 265, 277 [WD NY 2018], citing GBL § 756-b [3]; Matter of Capital Siding & Constr., LLC [Alltek Energy Sys., Inc.], 138 AD3d 1265, 1266 [3d Dept 2016] [seminal case], lv denied 27 NY3d 911 [2016]; accord Maple Drake Austell Owner, LLC v D.F. Pray, Inc., 385 F Supp 3d 373, 376 [SD NY 2019] [following Capital Siding in similar dispute between project owner and general contractor]). Likewise, any defenses that 1211 Western has or may have to the PPA claim "must be evaluated, at least in the first instance, through arbitration" (Pike, 349 F Supp 3d at 278).
1211 Western acknowledges the foregoing authorities, which are sparse but uniform, but invites the Court to disregard them because they "ignore the implications of the limited remedies actually provided by the statute and the significant fact that the statute does not actually compel payment based on failure to abide by the timing requirements contained in the PPA" (MOL at 6; see NYSCEF Doc No. 24 ["Reply MOL"] at 11).
As an initial matter, the Court does not believe that it is free to disregard the Appellate Division, Third Department's binding precedent in Capital Siding, which upheld this Court's denial of a similar petition brought by a general contractor seeking to permanently stay the PPA arbitration demanded by a subcontractor from whom payments were withheld (see 138 AD3d at [*4]1265).
In any event, there is no merit to 1211 Western's argument that the PPA arbitration should be permanently stayed because the relief demanded by Trinity—payment of the unpaid Pay Apps, attorney's fees, interest and costs (see Demand)—is beyond the scope of relief that can be granted under the PPA. Trinity's Demand plainly raises an issue that is subject to arbitration, a claim "that an owner has violated the provisions of [the PPA]" (GBL § 756-b [3] [a]); there is no dispute that the arbitrator is authorized to award at least one element of the relief requested by Trinity (see id. § 756-b [1] [a] [interest]); and Trinity expressly renounces any attempt at "seeking an arbitration determination" of the parties' plenary claims against one another, including the issue of "whether [1211 Western] breached the Contract" (Opp Mem at 7).
Moreover, it is for the arbitrator to determine in the first instance the relief to be awarded to Trinity for any proven violation of the PPA. If, following the conclusion of the arbitral process, 1211 Western believes that the relief awarded by the arbitrator is beyond the scope of the PPA, it may pursue vacatur (or modification) of the award on the ground that the arbitrator "exceeded his [or her] powers" (CPLR 7511 [b] [1] [iii]).
In sum, while 1211 Western has raised some legitimate questions about the proper scope of a PPA arbitration and the relief that may be awarded therein, it has not demonstrated a basis for permanently staying the expedited arbitration of Trinity's claim that 1211 Western violated the PPA with respect to Pay Apps #27-30.
B. Constitutionality of the PPA
In its opening brief, 1211 Western argued principally that the PPA violates the Contracts Clause of the United States Constitution (see US Const, art I, § 10; MOL at 10-16). In that connection, 1211 Western asserted, in passing, that the "ill-defined scope of the 'PPA arbitration' further exacerbates its constitutional infirmity" (id. at 16-17).
In reply, based on submissions from the Attorney General, 1211 Western withdrew its Contracts Clause argument, conceding that such a challenge will not lie where, as here, the legislation at issue was enacted prior to contract formation (see Reply MOL at 2 n 1; see e.g. Held v State of New York Workers' Compensation Bd., 85 AD3d 35, 45 [3d Dept 2011], lv dismissed and denied 17 NY3d 837 [2011], cert denied 566 US 936 [2012]). Thus, 1211 Western is left with the argument that the PPA is unconstitutionally vague (see MOL at 16-17).
As observed by Trinity, the Contract executed by 1211 Western in 2021 provides that it "shall be governed by and construed in accordance with the laws of the State of New York," (Contract, § 20.2), including the PPA, which was enacted in 2002 (see L 2002, ch 127, as amended by L 2009, ch 417). Further, in executing the Amendment on July 25, 2022, 1211 Western expressly agreed that "the requirements of [the PPA] shall govern the schedule of payments by Owner to [Trinity]" (Amendment, ¶ 6). The Court concludes that 1211 Western's promise and agreement to have the PPA govern the particulars of its contractual relationship with Trinity amounts to a waiver of its right to challenge the PPA as unconstitutionally vague.
CONCLUSION
Based on the foregoing, it is
ORDERED and ADJUDGED that petitioner's application to stay arbitration is denied, and the Petition is dismissed; and it is further
ORDERED that all temporary stays are lifted.
This constitutes the Decision, Order & Judgment of the Court, the original of which is being uploaded to NYSCEF for entry by the Albany County Clerk. Upon such entry, counsel for respondent shall promptly serve notice of entry on all other parties entitled thereto.
Dated: February 15, 2024
Albany, New York
RICHARD M. PLATKIN
A.J.S.C.
Papers Considered: 
NYSCEF Doc Nos. 1-5, 7-8, 11-21, 24.

Footnotes

Footnote 1: The Demand states that it "will likely be amended to include" Pay App #31.